NELSON P. COHEN
United States Attorney

GARY M. GUARINO
Assistant U.S. Attorney
222 West Seventh Avenue, #9
Anchorage, Alaska  99513-7567
Phone: (907) 271-5071
Fax: (907) 271-2344
E-mail: gary.guarino@usdoj.gov

Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| KIMBERLY ALLEN, Personal Representative of the Estate of TODD ALLEN, Individually, on Behalf of the Estate of TODD ALLEN, and On Behalf of the Minor Child, PRESLEY GRACE ALLEN<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. 3:04-cv-0131-JKS<br><br>**UNITED STATES' OPPOSITION TO PLAINTIFF'S MOTION FOR RULING REGARDING PROOF OF CAUSATION** |

**INTRODUCTION AND SUMMARY ARGUMENT**

Plaintiff Kimberly Allen (Mrs. Allen) has filed a motion seeking to shift the burden of proof regarding causation to the United States. In effect, Plaintiff seeks to have the Court establish a presumption that the United States' conduct was the legal cause of

Todd Allen's death unless the United States can prove otherwise. The United States opposes Plaintiff's motion on the following grounds.

First, the Alaska legislature has specifically directed that the plaintiff has the burden of proof for all elements of a medical malpractice action. AS 09.55.540(a). The Alaska Supreme Court has held that the provisions of this law are so clear and unambiguous that the courts are foreclosed from revising the standards contained therein through judicial construction. Crosby v. United States, 48 F.Supp.2d 924, 930 (D. Ak. 1999); Poulin v Zartman, 542 P.2d 251, 270 (Alaska 1975). Plaintiff has failed to cite any controlling Alaska authority that would justify a revision of the legislatively-mandated burden of proof for Plaintiff's malpractice action.

Second, Plaintiff admits she does not claim and cannot prove that the United States engaged in the spoliation of evidence.[1] There is no evidence that the United States lost or destroyed medical records and thus no grounds to invoke the shifting of the burden of proof analysis in Sweet v. Sisters of Providence, 895 P.2d 484 (Alaska 1995).

Third, Plaintiff has failed to prove that the claimed lack of additional medical information has substantially or unfairly hindered her ability to establish a prima facie case or to try to prove causation. Plaintiff is in no different position than any plaintiff who claims that the defendant should have made a different diagnosis and then performed additional medical tests. Under Plaintiff's novel theory, every plaintiff could seek to shift

---

[1] Plaintiff's Memorandum for Ruling Regarding Proof of Causation p. 15 (hereinafter "Plaintiff's Memorandum").

the burden of proof by claiming that the defendant should have performed further tests and these tests would have provided "missing" data, allegedly helpful to plaintiff.[2] However, that is not the law in Alaska.  <u>Sweet</u>, 895 P.2d at 491-92 (plaintiff must prove that the defendant wrongfully <u>lost or destroyed</u> essential medical records).

Further, Plaintiff's motion misstates the United States' position with regard to the lack of causation for Todd Allen's catastrophic subarachnoid hemorrhage (SAH) and death.  The United States' defense is not based on the lack of evidence regarding Allen's condition during the morning and afternoon of his death.[3]  Instead, it is based on the tragic reality that Allen could not have been evaluated and admitted at ANMC, then transferred to another hospital in Anchorage for diagnostic angiogram studies that were not available at ANMC,[4] and then medevaced to Seattle for specialized brain surgery, all in the 6 to 8 hours before he suffered his fatal SAH and coma that same afternoon.[5]

<u>Fourth</u>, Plaintiff's claimed difficulty in proving the nature and location of the aneurysm and brain injury suffered by Allen is due, in part, to her decision not to request an autopsy.  Mrs. Allen was concerned about what had happened to her husband and she talked to the doctors at Providence hospital about wanting an autopsy to get "some more

---

[2] Plaintiff's argument ignores the fact that the additional data might actually refute or undercut the plaintiff's claims.

[3] Plaintiff's Memorandum pp. 2-3.

[4] In 2003, ANMC did not have the capacity to perform diagnostic cerebral angiograms, which are required to diagnose aneurysms. Exhibit G, Dr. Brodsky Deposition, pp. 6-7, 94-96.

[5] Exhibits K, L, N, United States' medical expert reports.

answers to her questions." They told her she had the right to request an autopsy.[6] Mrs. Allen decided not to ask for an autopsy.[7] An autopsy would have provided detailed information as to the aneurysm and the cause of Allen's death. Plaintiff should not be allowed to shift the burden of proof when her decision resulted in the lack of more detailed medical evidence regarding Allen's brain injury and death.

<u>Fifth</u>, the cases from other jurisdictions (primarily California)[8] that Plaintiff cites are not controlling authority and they are legally and factually inapplicable under Alaska law and the malpractice claims and evidence in this case.

Finally, it would be premature to shift the burden of proof on causation prior to the Court's review of the evidence to be presented at trial regarding Plaintiff's claims and the government's defenses. <u>Sweet</u>, 895 P.2d at 490-91 (court's ruling on the burden of proof was made as part of the closing instructions to the jury).

## FACTUAL SUMMARY

Plaintiff's motion offers a selective and one-sided version of the claims and defenses in this case. In the interests of brevity, the United States will not respond to every factual issue, but will instead focus on the significant and often disputed factual issues for Plaintiff's motion and arguments.

---

[6] Exhibit H, Dr. Lee Deposition pp. 35-37, 40-41.

[7] Exhibit A, K. Allen Deposition pp. 141-43.

[8] Plaintiff's Memorandum pp. 11-14.

In November 1999, Todd Allen suffered severe injuries to his head and jaw when he was hit, as a pedestrian, by a passing vehicle. He had initial facial surgery after the accident. In June 2001, he had a second surgery to repair his "completely broken" jaw with a titanium implant. Before the tragic events in this case, Allen was planning to have further surgery on his jaw.[9]

As a result of his injuries, Allen suffered severe and ongoing pain in his head, jaw, and neck during 2000 to 2003. He used narcotic pain medication on a regular basis during these years.[10] In December 2002 and January 2003, he entered the "ANMC Chronic Pain Program" and an "Agreement for Long-Term Use of Opioid Pain Medications."[11]

In January 2003, Allen filled out an ANMC "Patient Initial Assessment" form for his chronic pain (Exhibit C). He listed the areas of his chronic pain as the right and left side of his head, his jaw joint and ear areas, and inside his right ear. He marked areas on a drawing, showing that he had pain on both sides of his face and head and in his neck and back of his head. He estimated that he had 16 "pain flares" in the prior month, which would last for "1-2 hrs to 2-3 days." He rated his pain as 10 (of 10) at its worst and 6 on average. He described his pain as Aching, Sharp, Throbbing, Shooting, and Unbearable.[12]

---

[9] Exhibit A, K. Allen Deposition pp. 31-34, 78-79.

[10] K. Allen Deposition, pp. 37-39, 53-54, 59-61.

[11] K. Allen Deposition, pp, 39-42; Exhibits B, C.

[12] Exhibit C, pp. 5-7, 12; Exhibit A, K. Allen Deposition, pp. 45-48, 60-61.

On April 18, 2003, Allen and his wife drove from Valdez to Anchorage, arriving in late evening, and picked up refills of his pain medications. The drive through the mountains was one of the activities that aggravated his chronic pain.[13] The next morning, April 19, Allen presented at the ANMC with complaints of "ears & head are hurting - up all night" and pain of 10.[14] There are disputed issues of fact as to Allen's symptoms, condition, and statements during this exam.

The ANMC intake nurse (Patricia Ambrose, R.N.) noted that Allen was "sitting with ease," that he did not appear to be having level 10 pain, that he was a chronic pain patient, that his condition did not seem severe, and that he could be seen by an Advanced Nurse Practitioner (ANP) on the UCC side of the clinic as opposed to the ER side.[15]

ANP Donna Fearey examined Allen and has testified that Allen's chief complaint was ear/jaw pain, that during his drive through the mountains he had increased pain in his right ear, and that he wanted to know if he had an ear infection. He was sitting calmly and was not in distress and was not holding his head or vomiting.[16] They discussed his chronic pain contract and medical history and he indicated that the pain was in his ear area on the right side. He did not complain of a severe headache and did not appear to be

---

[13] K. Allen Deposition pp. 82-86; Exhibit C, p. 4

[14] Exhibit D p. 1.

[15] Exhibit E, P. Ambrose Deposition, pp. 47-48, 54-55. The ANMC UCC and ER were located in the same area with patients assigned to either side.

[16] Exhibit D; Exhibit F, D. Fearey Deposition, p. 58.

in severe pain.[17]  Allen's hand-written note describing his pain complaints at ANMC that morning stated, "pain all night in R. [Right] ear bad."[18]

After her exam, ANP Fearey concluded that Allen's pain complaints were consistent with his prior jaw injuries and that his pain symptoms were similar in nature and location to his history of chronic pain.[19]  She ordered a shot of phenergan for his nausea so that he could take his pain medicine.  Allen was then discharged with instructions to return if his symptoms worsened or did not improve.[20]

After discharge, Allen and Mrs. Allen went to the ANMC cafeteria for breakfast.  Allen appeared tired but he said he felt better.  They then went to Sam's Club and Mrs. Allen shopped while Allen took a nap.  They returned to their motel and Allen laid down to nap while Mrs. Allen went out to shop and get lunch.  When Mrs. Allen returned Allen appeared to be snoring abnormally and he did not respond or wake up when Mrs. Allen tried to wake him for lunch.[21]

Later, Mrs. Allen tried to wake Allen a second time but he did not respond.  She claims she called ANMC to report his abnormal snoring and that she was told by a nurse that if he was breathing he was okay.  She laid down next to Allen and watched TV for a

---

[17] Exhibit F, D. Fearey Deposition, pp. 64-65, 70-71, 76.

[18] Exhibit D p. 3; Exhibit A, K. Allen Deposition, pp. 108-11.

[19] Exhibit F, D. Fearey Deposition pp. 78-79.

[20] Exhibit D p. 2; Exhibit F, D. Fearey Deposition pp. 71-72.

[21] Exhibit A, K. Allen Deposition pp. 112-19

time and then tried to forcibly wake Allen.  He did not respond and as she shook him he was "dead weight" and when she rolled him over blood came out of his mouth.[22]  She then called 911 and the emergency medics transported Allen to Providence hospital

The Providence physicians testified that Allen was "dead in the field" when the paramedics found him, that when he arrived at Providence he met some of the criteria for brain death, and that the consulting neurosurgeon advised that nothing could be done surgically.[23]  Allen did not regain consciousness and he was declared dead on April 20 due to his sudden SAH.  (Exhibit J).

**United States' Medical Expert Opinions**

The United States has obtained expert reports from several medical experts including: Dr. Michael Levy, an Anchorage physician, board certified in emergency and internal medicine, with experience as a medical director for emergency services and med-evac services in Alaska;[24]  Dr. Richard Rubenstein, a board certified neurologist,[25] Dr. Ronald Shallat, a neurosurgeon;[26] and Ms. Dede Duntze, a certified Family Nurse Practitioner with emergency medicine experience as an ANP.[27]

---

[22] K. Allen Deposition pp. 120-21.

[23] Exhibit H, Dr. Lee Deposition p. 24; Exhibit I, Dr. Dietz Deposition pp. 9, 21.

[24] Exhibit O, Dr. Levy Deposition pp. 9, 12-14, 21-23, 51.

[25] Exhibit P, Dr. Rubenstein Deposition pp. 7, 13.

[26] Exhibit Q, Dr. Shallat Deposition, pp. 11-13., 83

[27] Exhibit N; Exhibit R, D. Duntze Deposition pp. 92, 96.

Copies of the reports from these medical experts are attached.[28] The reports and deposition testimony of these experts include, without limitation, the following issues for the United States' defenses. Allen's symptoms as reported in the records and by ANP Fearey were consistent with his chronic pain history.[29] ANP Fearey's assessment of Allen's symptoms was reasonable and she did not breach the standard of care.[30] Allen had a sudden, catastrophic SAH (a large bleed or rebleed of an aneurysm) early that afternoon after his discharge from ANMC.[31] Allen would not have had surgery to prevent his SAH in the short time (6-8 hours) between his discharge and his acute SAH that afternoon; he could not have been medevaced to Seattle.[32] Thus, his tragic outcome would have been the same even if he had been diagnosed with a possible aneurysm in the morning at ANMC.

**ARGUMENT**

Plaintiffs filed this action under the FTCA, which provides that the United States shall be liable for damages for tort claims to the same extent that a private party would be liable to the claimant "in accordance with the law of the place where the act or omission

---

[28] Exhibits K, L, M, and N.

[29] Exhibit O, pp. 79-81, 95; Exhibit P, pp. 54-55, 135-37; Exhibit Q, pp. 101-04, 114.

[30] Exhibit K p. 1; Exhibit O pp. 59, 107; Exhibit P p. 3.

[31] Exhibit O pp. 165-67, 175; Exhibit P pp. 180-81; Exhibit Q pp. 171-72.

[32] Exhibit K pp. 6-8; Exhibit O pp. 191-92; Exhibit Q pp. 160-62.

occurred."[33]  The alleged tortious conduct in this case occurred at ANMC in Anchorage, thus, the Court applies the law of Alaska regarding the elements of proof for a medical malpractice action.  Yako v. United States, 891 F.2d 738, 745 (9th Cir. 1989).

The Alaska legislature has mandated that the plaintiff has the burden of proof for all elements of a medical malpractice action.  AS 09.55.540(a).  The Alaska Supreme Court has held that the terms of this statute are so clear and unambiguous that the courts are foreclosed from revising the standards through judicial construction.  Crosby v. United States, 48 F.Supp.2d 924, 930 (D. Ak. 1999); Poulin v Zartman, 542 P.2d 251, 270 (Alaska 1975).

Plaintiff does not claim and cannot prove that the United States engaged in the spoliation of evidence.[34]  The United States did not lose or destroy any medical records and there is no basis for shifting the burden of proof as a sanction under Sweet v. Sisters of Providence, 895 P.2d 484 (Alaska 1995).  Further, the United States did not perform a medical procedure and then fail to create or maintain a required medical record for that procedure.  See Patrick v. Sedwick, 391 P.2d 453, 457 (Alaska 1964) (surgeon failed to generate the required report for the plaintiff's surgery); see also Mead v Pazzi, 899 A.2d 437, 444-45 (R.I. 2006) (spoliation instruction was justified where company failed to prepare an incident report for plaintiff's injury that was required by company policy).

---

[33]  28 U.S.C. §§1346(b) and 2674.

[34] Plaintiff's Memorandum p. 15.

Plaintiff cannot prove any spoliation claim under Alaska law. Instead, Plaintiff seeks to retroactively create a pseudo-spoliation claim by alleging that ANMC should have performed further medical tests and it should have generated additional medical records. This theory may be the basis for a malpractice claim but it does not justify a shifting of the burden of proof under Sweet. To accept Plaintiff's theory would mean that there would be a retroactive "spoliation" claim and shifting of the burden of proof in every case involving claims for misdiagnosis or failure to conduct additional medical tests. Plaintiff has not cited any Alaska authority that would justify this retroactive revision of the statutory burden of proof for Plaintiff's malpractice action.

Next, Plaintiff has failed to prove that the claimed lack of additional medical information has substantially or unfairly hindered her ability to establish a prima facie case or to try to prove causation. Plaintiff has cited opinions from her medical experts and other evidence in support of her claims.[35] Plaintiff's lack of other information is similar to any plaintiff who claims that the defendant should have performed further tests or procedures. Plaintiff has not cited any controlling authority that would justify shifting the burden of proof based on retroactive claims that the defendant should have performed other medical procedures, which would have generated additional "missing" data. Absent evidence of wrongful spoliation of existing evidence under the Sweet analysis, Plaintiff is not entitled to override the burden of proof under Alaska law. AS 09.55.540(a).

---

[35] Plaintiff's Memorandum pp. 5-8.

Allen v. USA
3:04-cv-0131-JKS                                11

As noted previously, Plaintiff's motion misstates the United States' causation defenses and evidence regarding Allen's catastrophic SAH and death.  The United States does assert that Allen's outcome would not have changed even if he had been diagnosed with a potential aneurysm on the morning of April 19.  However, the United States does not base this defense on a lack of information as to Allen's condition during the brief hours before his SAH and fatal coma.  Instead, the government's medical experts have reported and will testify that Allen could not have been evaluated and admitted at ANMC, then transferred to another hospital in Anchorage for further studies, and then flown to Seattle for specialized brain surgery, in the 6 to 8 hours between his discharge (shortly after 8:15 a.m.) and his SAH and resulting coma that afternoon (from 2 to 4:30 p.m.)[36]

Regardless of Allen's condition in the morning, his sudden bleeding and coma would have occurred long before he would have received any preventive neuro-surgical treatment.  The alleged missing information (CT scan) and any additional tests might have undercut Plaintiff's claims if they showed that Allen's aneurysm was inoperable or in a surgically difficult location.  Thus, the United States is not seeking to obtain any wrongful or unjustified benefit from the evidence or lack of evidence in this case.

Further, to the extent that Plaintiff's experts attempt to make predictions regarding Allen's condition and chance of survival, while awaiting a hypothetical medevac to Seattle for surgical treatment, the United States is entitled to challenge the medical and evidentiary basis for their opinions.  This includes questions as to their assumptions

---

[36] Exhibit K p. 6; Exhibit O pp. 190-92; Exhibit Q pp. 160-62.

regarding Allen's condition, the evidence or lack of evidence or knowledge regarding Allen's aneurysm and SAH, and the progress of Allen's SAH and coma.  Thus, Plaintiff's request to have the Court preclude evidence or lack of evidence that might challenge Plaintiff's claims and her experts' opinions should be denied.  Plaintiff cites no authority for this argument under Alaska law.

In addition, Plaintiff's claimed difficulty in proving the nature of the aneurysm, SAH, and brain injury suffered by Allen is partly due to her decision not to request an autopsy.  At Providence hospital, Mrs. Allen was concerned that Allen's condition should have been diagnosed at ANMC and she talked to the doctors about having an autopsy to get "some more answers to her questions."  She was told she had the right to seek an autopsy but she decided not to ask for an autopsy.[37]  An autopsy would have provided "missing" information as to the SAH and the cause of Allen's death.  Plaintiff should not be allowed to legally benefit from her decision, which resulted in the lack of forensic pathology evidence regarding Allen's death.

The cases from other jurisdictions that Plaintiff cites do not involve or apply Alaska law on the burden of proof in malpractice actions, AS 09.55.540(a), or the Alaska Supreme Court's spoliation analysis under Sweet.  Thus, they are legally irrelevant and cannot modify established Alaska statutory law and precedent.

---

[37] Exhibit A, K. Allen Deposition pp. 141-43; Exhibit H, Dr. Lee Deposition pp. 35-37, 40-41;

Plaintiff relies primarily on the California court's decision in Haft v. Lone Palm Hotel, 478 P.2d 465 (Cal. 1970). Haft involved a motel that violated the statutory safety requirements regarding the presence of lifeguards and/or warning signs for the motel pool. The motel's violation of these safety requirements created and increased the hazard (drowning), it deprived the victims of the safety protections that the law required, and it prevented the plaintiffs from proving what had happened. Since there were no lifeguards or witnesses to the drowning it was impossible for the plaintiffs to prove the events that led to the drowning. Under those unique circumstances, the court shifted the burden of proof on causation to the defendant, which was the owner of the premises and the creator of the dangerous condition. Id. 467-77.

In this case, the United States did not violate any statutory safety requirements and it did not cause the hazardous condition (Allen's aneurysm). Plaintiff and the medical providers were witnesses to Allen's condition on April 19 and Plaintiff has resort to expert witnesses and medical records to try to prove her claims regarding Allen's SAH and resulting death. Plaintiff has not established that it is "nearly impossible" for her to prove her claims. The public policy factors that motivated the Haft decision (the need to discourage and sanction the wrongful violation of public safety laws) are not present here.

Plaintiff cites another California case, Galanek v. Wismar, 68 Cal.App.4th 1417 (Cal. App. 1999). However, this case involved the defendant's negligent spoliation of existing evidence. The defendant attorney knowingly and negligently failed to prevent the destruction of his client's car, which resulted in the loss of this critical evidence and

the dismissal of the client's products liability action against the car manufacturer. The court shifted the burden of proof for the client's malpractice claim because the attorney's spoliation made it impossible for the client to prove her claims. Id. at 1426-27.

In this case there was no spoliation of evidence by the United States and there is no showing that it is impossible for Plaintiff to prove her claims. Galenek can be read as applying a spoliation analysis similar to the analysis under Sweet. Thus, it is legally and factually inapplicable to this case because there is no spoliation to sanction.

Plaintiff's cite to Hicks v. United States, 368 F.2d 626 (4th Cir. 1966) is an attempt to apply the "loss of chance doctrine" that was rejected by the Court in Crosby, 48 F.Supp2d at 930-32. The Hicks approach would find causation and impose liability if there was "any substantial possibility" that the plaintiff might have survived. Hicks, 368 F.2d at 633 (causation and liability for "whatever chance of recovery" the plaintiff might have had). That lesser standard of proof and causation contravenes the established "preponderance of evidence" standard under Alaska law. AS 09.55.540(a); Crosby, 48 F.Supp.2d at 930.

Finally, it would be premature to grant Plaintiff's motion and to shift the burden of proof prior to the Court's review of the evidence at trial regarding Plaintiff's claims and the government's defenses. Sweet, 895 P.2d at 490-91 (court's ruling on the burden of proof was made as part of the closing instructions to the jury).

// //

// //

## CONCLUSION

For the reasons set out above, the United States respectfully requests that the Court deny Plaintiff's motion and Plaintiff's requests for shifting the burden of proof or for a preclusion order regarding the lack of medical evidence for Allen's condition and SAH.

RESPECTFULLY SUBMITTED this 22nd day of December, 2007.

>NELSON P. COHEN
>United States Attorney
>
>s/Gary M. Guarino
>GARY M. GUARINO
>Assistant U.S. Attorney
>222 West 7th Ave., #9, Rm. 253
>Anchorage, AK 99513-7567
>Phone: (907) 271-5071
>Fax: (907) 271-2344
>E-mail: gary.guarino@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on December 22, 2006,
a copy of the foregoing UNITED STATES'
**OPPOSITION TO PLAINTIFF'S MOTION FOR
RULING REGARDING PROOF OF
CAUSATION** was served electronically on Donna McCready.

s/ Gary M. Guarino