Donna J. McCready
Ashburn & Mason, P.C.
1227 West 9th Avenue, Suite 200
Anchorage, Alaska 99501
(907) 276-4331 / phone
(907) 277-8235 / fax

Attorney for Kimberly Allen

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| KIMBERLY ALLEN, Personal Representative of the ESTATE OF TODD ALLEN, Individually, on Behalf of the ESTATE OF TODD ALLEN, and on Behalf of the Minor Child PRESLEY GRACE ALLEN,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Defendants. | Case No.:   3:04-CV-0131-JKS |

**PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION
TO MOTION FOR RULING REGARDING PROOF OF CAUSATION**

**I.     FACTUAL SUMMARY**

The Government does not dispute that Todd Allen presented at the Alaska Native Medical Center ("ANMC") Emergency Department at 7:10 a.m. complaining of "ears and head are hurting – up all night" with "10/10" pain and that Mrs. Allen told the triage nurse that "he had taken all his pills and he still had pain." The Government further

does not dispute that Mr. Allen was triaged to see a mid-level practitioner who failed to diagnose Mr. Allen's true condition and who discharged him. It does not dispute that had Mr. Allen been triaged as an acuity level 2 or 3 that he would have been seen by an Emergency Room physician. The Government does not dispute that Mr. Allen in fact had a brain bleed the morning of April 19, 2003, when he presented to the ANMC Emergency Department. Finally, the Government does not dispute the fact that Mr. Allen had never presented to ANMC unable to control his pain with medications or the fact that he had never presented complaining of nausea and vomiting in addition to head pain.[1]

## II. ARGUMEMT

In this Federal Tort Claims Act ("FTCA") case the Court applies Alaska substantive law. *Yako v. United States*, 891 F.2d 738, 745 (9th Cir. 1989). *See also*, *Smith v. United States*, 128 F.Supp.2d 1227, 1231 (E.D.Ark. 2000). In addition, questions of burden shifting and rebuttable presumptions are controlled by state law. *See* Fed. R. Evid. 302. *See also*, *e.g. Welsh v. United States*, 844 F.2d 1239, 1243 (6th Cir. 1988)(in FTCA case, federal court applied Kentucky law to question of shifting

---

[1] The Government makes the point that Mr. Allen filled out an ANMC Patient Initial Assessment regarding his chronic jaw pain where he documented flare-ups in pain. Opp. at 5. The fact of the matter, not disputed by the Government, is that the Emergency Department personnel did not have the Patient Initial Assessment form on April 19th and that, whether or not Mr. Allen had flare-ups in pain, he had not presented to the Emergency Department complaining of pain or anything else in the two years prior to his April 19th presentation. In any event, the same standard of care applies in the emergency room setting to evaluating patients with head pain, whether or not they are patients with chronic pain.

PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO MOTION FOR RULING
REGARDING PROOF OF CAUSATION
*Allen v. USA,* Case No. 3:04-CV-0131-JKS

Page 2 of 15

ASHBURN & MASON P.C.
LAWYERS
1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331 • FAX 907.277.8235

burden of proof to defendant). In judging whether or not this Court may shift the burden of proof on causation or preclude the United States from defending on the element of causation by using a void in the evidence created by its own negligence, this Court "makes its best prediction, even in the absence of direct state court precedent" of what the Alaska Supreme Court would do "if it were confronted with this question. In this inquiry [this Court] may rely upon analogous cases and relevant dicta in the decisional law of the State's highest court … and persuasive opinions from other jurisdictions …." 844 F.2d at 1245.

The Government's main argument in opposition to Mrs. Allen's motion, that "[t]he Alaska Supreme Court has held that the provisions of [AS 09.55.540(a)] are so clear and unambiguous that the courts are foreclosed from revising the standards contained therein through judicial construction"[2] is flawed. The Government relies on *Crosby v. United States,* 48 F.Supp.2d 924 (D. Alaska 1999), which relied directly on *Poulin v Zartman*, 542 P.2d 251 (Alaska 1975), the only Alaska Supreme Court case cited by the Government in support of its argument that burden shifting is inconsistent with the strict interpretation of AS 09.55.540(a). The Government fails to note that the Alaska Supreme Court expressly overruled its holding in *Poulin v. Zartman*, that Alaska Statutes, such as AS 09.55.540, must be so strictly construed. *State v. Alex*, 646 P.2d 203, 208 n. 4 (Alaska 1982), *abrogration recognized* by *Liimatta v. Vest*, 45 P.3d 310 (Alaska 2002).

---

[2] Opp. at 10.

PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO MOTION FOR RULING
REGARDING PROOF OF CAUSATION
*Allen v. USA,* Case No. 3:04-CV-0131-JKS

In any event, nothing in the text of AS 09.55.540 prohibits this Court from shifting to the Defendant the burden of proving Mr. Allen's condition was untreatable the morning he sought care at ANMC. Alaska Statute 09.55.540 establishes that a plaintiff must prove the applicable standard of care in a medical malpractice case and that negligence may not be presumed or inferred. *See, e.g, Priest v. Lindig*, 583 P.2d 173, 176 (Alaska 1978). In the instant case, Mrs. Allen is not arguing that she should be absolved from proving the applicable standard of care or that this Court should presume that the Government was negligent. The entirety of her motion to shift the burden of proof regarding causation is premised on the Plaintiff first proving by a preponderance of evidence that the Government was negligent in its evaluation of Mr. Allen and its failure to diagnosis and treat Mr. Allen.

The Government, in its opposition, further misses the point that the question of burden shifting is a common law question, not one of statutory interpretation. *See Sweet v. Sisters of Providence*, 895 P.2d 484 (Alaska 1995) and the cases cited therein.[3]

---

[3] Or if one were to look at the question as one of statutory interpretation, the Alaska Supreme Court's decision in *Sweet v. Sisters of Providence*, is further evidence that the Alaska Supreme Court would not construe AS 09.55.540 as strictly as the Government and the court in *Crosby* concluded. Notably, even after the Alaska Supreme Court decided *Sweet*, the legislature has not taken any action to reverse its holding that the burden of proof on liability and causation can be shifted in a medical malpractice case. Furthermore, the Government's construction of AS 09.55.540(a) is counter to the principle that where a statute takes away a right established by the common law, then "the legislative purpose to do so must be clearly and expressly stated by the legislature. *See, e.g.,* Norman J. Singer, 3 *Sutherland Statutory Construction,* § 61.1, 6th Ed.)("to abrogate a common law principle, the statute must 'speak directly' to the question addressed by the common law.") Alaska Statute 09.55.540 does not

PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO MOTION FOR RULING
REGARDING PROOF OF CAUSATION
*Allen v. USA,* Case No. 3:04-CV-0131-JKS

Page 4 of 15

Although the Alaska Supreme Court in *Sweet* did not directly discuss AS 09.55.540(a), its holding, published approximately twenty years after AS 09.55.540 was enacted, demonstrates that it viewed the issue of burden shifting as a matter within the court's inherent power to control litigation and not governed by Alaska's medical malpractice statute. *Accord Smith v. United States*, 128 F.Supp.2d 1227, 1231-1235 (E.D.Ark. 2000).

In *Smith v. United States*, a medical malpractice case brought under the FTCA, the plaintiff's son died of complications after undergoing a complicated 8-hour vascular surgery. While one of the assisting surgeons dictated an operative note, the primary surgeon failed to prepare one. 128 F. Supp.2d at 1229. Although Arkansas statutory law regarding standard of care and burden of proof applied,[4] the court in *Smith* deemed it appropriate to draw a negative inference from the surgeon's failure to create a medical

---

expressly abrogate the court's inherent authority to shift the burden of proof where the defendant's own negligence hinders the plaintiff's ability to prove his or her case.

[4] "In Arkansas, the standard of care and burden of proof in a medical malpractice case is defined by statute as follows:

(a) In any action for medical injury, the plaintiff shall have the burden of proving:

(1) The degree of skill and learning ordinarily possessed and used by members of the profession of the medical care provider in good standing, engaged in the same type of practice or specialty in the locality in which he practices or in a similar locality;

(2) That the medical care provider failed to act in accordance with that standard; and

(3) That as a proximate result thereof, the injured person suffered injuries which would not otherwise have occurred.

Ark. Code Ann. § 16-114-206." *Id*. at 1231-1232. As can be seen, Arkansas's medical malpractice statute is quite similar to AS 09.55.540(a).

PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO MOTION FOR RULING
REGARDING PROOF OF CAUSATION
*Allen v. USA,* Case No. 3:04-CV-0131-JKS

Page 5 of 15

record and to therefore conclude that the plaintiff had met his burden of proof on negligence and causation even where the surgeon testified that he remembered the surgery and that there was no negligence.  *Id*. at 1231-1235.  In *Smith*, the physician's failure to create a medical record was found to have "'greatly hampered'" plaintiff's ability to prove what was actually done by the surgeon.  *Id*. at 1234.

Similarly, the Court of Appeals for the Sixth Circuit in *Welsh v. United States*, deemed it appropriate to shift the burden of proof on causation to the defendant in a medical malpractice case brought under the FTCA where the defendant's negligence impaired the ability of the patient to prove a causal connection between the physicians' conduct and his death, even though under applicable state law (Kentucky) negligence could not be presumed and it was incumbent upon the plaintiff to prove negligence and causation.  844 F.2d at 1243, 1248-1249.

Mrs. Allen has not and is not claiming that the Government destroyed documents; she argues that the burden of proof regarding causation should be shifted to the United States under the principle enunciated in *Haft v. Lone Palm Hotel*, 478 P.2d 465 (Cal. 1970), and that the policy underlying the holding in *Sweet v. Sisters of Providence* and the cases cited therein and above supports her position.  The principle enunciated in *Haft* is that the burden of proof may be shifted:

> When there is a substantial probability that a defendant's negligence was a cause of an accident, and when the defendant's negligence makes it impossible, as a practical matter, for plaintiff to prove 'proximate causation' conclusively, it is more appropriate to hold the defendant

PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO MOTION FOR RULING
REGARDING PROOF OF CAUSATION
*Allen v. USA,* Case No. 3:04-CV-0131-JKS

Page 6 of 15

> liable than to deny an innocent plaintiff recovery, unless the defendant can prove that his negligence was not a cause of the injury.

*Haft*, 478 P.2d at 476.  *See also Thor v. Boska*, 113 Cal.Rptr. 296 (1974).[5]

The Government claims that "[t]o accept Plaintiff's theory would mean that there would be a retroactive 'spoliation' claim and shifting of the burden of proof in every case involving claims for misdiagnosis or failure to conduct additional medical tests."[6] The Government's 'Chicken Little' argument is not persuasive.  The Government is responsible for the peculiar facts of this case.  This case is unusual and unlike most misdiagnosis cases because the Government's conduct led Mr. Allen to engage in behavior (eating, walking, lifting, sleeping unmonitored) that would foreseeably and significantly worsen his condition (i.e., cause of rebleed) in the critical period of time during which he could have been saved.  Mr. Allen presented to the ANMC emergency department complaining of 10/10 pain in his head and ear.  He had been vomiting, his speech was slow and he was unable to control his pain with medication.  Instead of being properly triaged in accordance with ANMC's own triage policies, which would have ensured that Mr. Allen would have been evaluated by an emergency room physician, he was triaged to a mid-level practitioner, who, failing to properly assess or

---

[5] The court in *Thor v. Boska*, quotes *Haft* regarding this very principle and raised whether *Haft* should be applied on remand to a medical malpractice case wherein the defendant physician lost his original clinic notes regarding the plaintiff.  113 Cal.Rptr. at 303.  *Sweet* cited *Thor v. Boska* as support for creating "a rebuttable presumption shifting the burden of persuasion to a health care provider who negligently alters or loses medical records relevant to a malpractice claim."  *Sweet*, 895 P.2d at 491.

[6] Opp. at 11.

PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO MOTION FOR RULING
REGARDING PROOF OF CAUSATION
*Allen v. USA,* Case No. 3:04-CV-0131-JKS

appreciate Mr. Allen's true condition, that he was suffering from a brain bleed,[7] sent him home. Her failure to adequately assess and diagnose Mr. Allen resulted in not only Mr. Allen not being admitted, treated and monitored but in Mr. Allen engaging in activities that foreseeably aggravated his condition.[8] Mr. Allen went into a coma and died the next day and the Government relies on the fact that Mr. Allen went into a coma in the late afternoon of April 19th in the absence of a proper diagnosis, monitoring and/or treatment and the resulting lack of specific data concerning his condition throughout the morning and afternoon of April 19, 2003, to argue that he would have died in any event. To allow the Government to benefit from its own negligence in that manner is offensive to society's sense of justice and fair play.

The Defendant claims that the Plaintiff has misunderstood the United States' causation defense and that "the United States does not base this defense on a lack of information as to Allen's condition during the brief hours before his SAH and fatal coma. Instead, the Government's medical experts have reported and will testify that Allen could not have been evaluated and admitted to ANMC, then transferred to another

---

[7] Even defendant's expert neurosurgeon, Dr. Shallat, agrees that Mr. Allen more likely than not had a sentinel bleed when he presented to ANMC the morning on of April 19, 2003. Exhibit 7 at 135-136, 171-172.

[8] As stated in Mrs. Allen's Memorandum in Support of her Motion, every defense expert in this case agreed that it would be below the standard of care to discharge a patient with a brain bleed and a physician would never allow such a patient to eat, walk around, lift things or sleep unmonitored. Exhibit 6 at 158-160 (Levy); Exhibit 5 at 70 (Rubenstein); Exhibit 7, at 52-53, 141-146, 157-160 (Shallat). *See also*, Exhibit 3 at 92 (Duntze). Furthermore, Dr. Shallat also testified that lifting and exerting oneself could raise a patient's blood pressure and could cause a rebleed. Exhibit 7 at 55-56, 186.

PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO MOTION FOR RULING
REGARDING PROOF OF CAUSATION
*Allen v. USA,* Case No. 3:04-CV-0131-JKS

hospital in Anchorage for further studies, and then flown to Seattle for specialized brain surgery, in the 6 – 8 hours between his discharge (shortly after 8:15 a.m.) and his SAH and resulting coma that afternoon (from 2 to 4:30 p.m.)."[9]  However one wants to phrase it, the Government is essentially arguing that the Plaintiff can not prove that the Defendant's negligence caused Todd Allen's death because, in the absence of information that would have been generated had he been properly diagnosed, including information about how he would have responded had he been admitted, monitored and medicated and not eating, walking, lifting and sleeping, we have to assume he would have died anyway.  This simply is not the case.  We do not know that Mr. Allen would have died in any event and the Government's very negligence is hindering Mrs. Allen's ability to prove the fact that he would not have died.

The Government goes on to claim that the "alleged missing information (CT scan) and any additional tests might have undercut Plaintiff's claims if they showed that Allen's aneurysm was inoperable or in a surgically difficult location.  Thus the United States is not seeking to obtain any wrongful or unjustified benefit from the evidence or lack of evidence in this case."[10]  The Government *is* seeking to benefit from the lack of evidence in this case.  And the fact that a defendant can always claim that evidence missing as a result of its negligence could have been harmful to the plaintiff, is the very reason why it is appropriate to shift the burden of proof to the defendant.  S*ee, e.g., Haft*

---

[9] Opp. at 12.

[10] *Id*.

PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO MOTION FOR RULING
REGARDING PROOF OF CAUSATION
*Allen v. USA,* Case No. 3:04-CV-0131-JKS

*v. Lone Palm Hotel*, 478 P.2d at 472 (the California Supreme Court, among other things, rejecting defendants' argument that it would be appropriate to assume, in the absence of witnesses or other direct proof, that guests of hotel who drowned in hotel pool would have ignored sign, had it been erected, that warned that no lifeguard was on duty).

The Government's argument that *Haft* does not apply because "the United States did not violate any statutory safety requirement and it did not cause the hazardous condition (Allen's aneurysm)"[11] is not persuasive. The Government's focus on whether or not it violated a regulation or statute misses the point. The significance of the statutory violation in *Haft* was not the violation itself, but rather that the violation was a means to establish negligence. In other words, the statutory violation was simply a way to show a breach of the standard of care. Indeed, the *Haft* decision spoke in terms of the hotel owner's "*negligence*" not its statutory violation. 478 P.2d at 472. Similarly, the Government's effort to distinguish *Haft* by asserting that it did not cause Allen's aneurysm fails. Mr. Allen's presentation at the ANMC Emergency Department with a critical illness was foreseeable as was the use of the Lone Palm's pool by guests on a hot summer day who are unable to swim. In *Haft*, the defendants did not *cause* the inability of the guests to swim, it simply created a situation in which those guests would foreseeably die.

---

[11] Opp. at 14.

PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO MOTION FOR RULING
REGARDING PROOF OF CAUSATION
*Allen v. USA,* Case No. 3:04-CV-0131-JKS

Page 10 of 15

*Haft's* reasoning is particularly applicable. As the court in *Haft* explained, "the evidentiary void in the instant action results primarily from defendants' failure to provide a lifeguard to observe occurrences in the pool area." *Id.* at 474. In this case, the paucity of evidence regarding causation is directly related to the defendant's failure to properly triage, evaluate and admit Mr. Allen which would have resulted in observing, monitoring and treating his condition.

The Government's attempt to distinguish *Galanek v. Wismar* is flawed. In *Galanek,* the defendant attorney did not destroy evidence; he failed to preserve the plaintiff's vehicle making it impossible for her to prove that her attorney's malpractice caused her to lose a viable products liability case. The point is that the defendant's very negligence in that case made it difficult if not impossible for the plaintiff to prove her case.

Next, the Government seeks to blame Mrs. Allen herself for the lack of information about her husband's condition by claiming that she should have ordered an autopsy. The Government's negligence put Mrs. Allen in the position of having to make a decision about having an autopsy on her husband and now it wants to use the fact that she did not ask for one against her. Without citing any authority or even the testimony of any expert, the Government claims that "an autopsy would have provided 'missing' information as to the SAH and the cause of Allen's death."[12] Certainly, an autopsy would not provide the vital information of what would have happened to Todd

---

[12] Opp. at 13.

PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO MOTION FOR RULING
REGARDING PROOF OF CAUSATION
*Allen v. USA,* Case No. 3:04-CV-0131-JKS

Allen had he been properly evaluated, had he been admitted to the hospital and had he been properly treated. In any event, as Mrs. Allen testified, she was told that she would have to pay for an autopsy and that it could not be conducted right away. Exhibit A to the United States' Opposition at 142-143. The Government's attempt to blame Mrs. Allen for the lack of information resulting from the Defendants' own negligence is not well taken. Mrs. Allen, pregnant with her first child and having witnessed her husband go into respiratory arrest and then subsequently die, would understandably not be in a state of mind to make careful and well thought out decisions at the time of her husband's death.

The Government contends that the principle in *Hicks v. United States*, 368 F.2d 626 (4th Cir. 1966) was rejected by *Crosby* and "contravenes" AS 09.55.540(a). As explained above, there is nothing in AS 09.55.540(a), a strict construction of which was relied upon by the court in *Crosby*, which precludes this Court from using its inherent authority to shift the burden of proof on causation or to limit the defendant's reliance on its own negligence to defend on the element of causation.

The facts of *Hicks*[13] are startlingly similar to the facts of the instant case. In *Hicks*, the patient presented at the emergency room with a potentially lethal condition, a "high obstruction," which had similar symptoms to gastroenteritis. A proper evaluation by the emergency room physician would more likely than not have revealed the patient's true condition, which would have lead to her admission to the hospital where

---

[13] The court in *Crosby* did not cite *Hicks* in its opinion and order.

PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO MOTION FOR RULING
REGARDING PROOF OF CAUSATION
*Allen v. USA,* Case No. 3:04-CV-0131-JKS

she would have been monitored and treated. 368 F.2d 626, 628-632. In Mr. Allen's case, he suffered from a potentially lethal condition, a brain bleed, the symptoms of which are similar to other more benign conditions. A proper evaluation by a qualified health care provider in the ANMC Emergency Department would have more likely than not revealed his true condition which would have lead to his admission to a hospital with appropriate monitoring and treatment.

If Mrs. Allen proves that the Government was negligent in its evaluation and failure to diagnosis Mr. Allen's true condition, there is nothing in Alaska State statutory or decisional law, *Crosby* notwithstanding, that prohibits this Court from using its inherent authority to preclude the Government from relying on the circumstances created by its very negligence to rebut Plaintiff's proof regarding causation.

## III. CONCLUSION

For the reasons outlined in Plaintiff's Memorandum in Support of Motion to Shift the Burden of Proof and in this Reply, Mrs. Allen respectfully requests this Court to order that, if Plaintiff establishes that Defendant was negligent in its evaluation and failure to diagnosis Mr. Allen the morning he sought treatment at ANMC, the burden of proof should shift to Defendant to demonstrate that Mr. Allen's condition was not treatable at that time because the paucity of evidence regarding Mr. Allen's precise condition and survivability is a direct consequence of Defendant's negligence. This approach merely "selects which of two parties – the innocent or the negligent – will

PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO MOTION FOR RULING
REGARDING PROOF OF CAUSATION
*Allen v. USA,* Case No. 3:04-CV-0131-JKS

Page 13 of 15

bear the onus of proving a fact whose existence or nonexistence was placed in greater doubt by the negligent party."[14]

Alternatively, Plaintiff respectfully requests that the Court order that the Defendant may not rely on the lack of medical evidence regarding Mr. Allen's condition the day he sought treatment at ANMC as a defense to liability.

                                          ASHBURN & MASON, P.C.
                                          Attorneys for Plaintiff

Dated:   1/2/2007           /s/   Donna J. McCready
                                          1227 West 9th Avenue, Suite 200
                                          Anchorage, Alaska 99501
                                          Phone: (907) 276-4331
                                          Fax: (907) 277-8235
                                          E-mail: djm@anchorlaw.com
                                          Alaska Bar No. 9101003

### CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of January, 2007, a copy of the foregoing Plaintiffs' Reply to Defendant's Opposition to Motion for Ruling Regarding Proof of Causation was served electronically on Gary Guarino, U.S. Attorney's Office

---

[14] *Welsh v. United States*, 844 F.2d at 1249.

PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO MOTION FOR RULING REGARDING PROOF OF CAUSATION
*Allen v. USA,* Case No. 3:04-CV-0131-JKS

Page 14 of 15

/s/ Donna J. McCready

P:\Clients\10194\Pleadings\Reply to Oppo re Burden Shifting.doc

Ashburn & Mason P.C.
Lawyers
1227 West 9th Avenue, Suite 200
Anchorage, Alaska 99501
Tel 907.276.4331 · Fax 907.277.8235