Donna J. McCready
Ashburn & Mason, P.C.
1227 West 9th Avenue, Suite 200
Anchorage, Alaska 99501
(907) 276-4331 / phone
(907) 277-8235 / fax

Attorney for Kimberly Allen

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| KIMBERLY ALLEN, Personal Representative of the ESTATE OF TODD ALLEN, Individually, on Behalf of the ESTATE OF TODD ALLEN, and on Behalf of the Minor Child PRESLEY GRACE ALLEN,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Defendants. | Case No.: 3:04-CV-0131-JKS |

**MEMORANDUM IN SUPPORT OF
MOTION IN LIMINE TO LIMIT DEFENDANT'S EXPERTS TO ONLY
TESTIFY WITHIN THE SCOPE OF THEIR EXPERTISE**

### I. INTRODUCTION

In this medical malpractice action, defendant has retained an array of medical experts to testify to various elements of the case. At least two of defendant's medical experts, however, seek to offer expert testimony on issues beyond the scope of their expertise. Such testimony is inadmissible under the Supreme Court's decisions in

*Daubert* and *Kumho Tire*. Plaintiff therefore respectfully requests that this Court order that two of Defendant's medical experts be restricted to testifying within the scope of their expertise as described below.

## II. FACTUAL BACKGROUND

### A. Dr. Richard Rubenstein

Defendant has retained Dr. Rubenstein, a neurologist in San Francisco, California, to testify regarding causation, specifically on Mr. Allen's prognosis had his condition been properly and timely diagnosed at Alaska Native Medical Center ("ANMC"). *See* Exhibit 1, Excerpt of Rubenstein's Deposition, at 15. As Dr. Rubenstein stated at his deposition, he was asked to give an opinion as to "whether Mr. Allen's subarachnoid hemorrhage was representative of a condition that could have been reasonably prevented had it been diagnosed in a timely fashion." *Id*.

Dr. Rubenstein, however, has also sought to offer expert testimony regarding: (1) the appropriate standard of care for emergency room diagnosis; (2) the appropriate standard of care for an emergency room nurse; and (3) the logistics of handling patients with aneurysms and subarachnoid hemorrhages *in Anchorage, Alaska,* specifically whether the patient would have received surgery in Alaska or been Medevaced to Seattle. All of these matters are outside the scope of Dr. Rubenstein's expertise as a *neurologist*. Dr. Rubenstein admitted at his deposition that he has no formal training or expertise in emergency room medicine. *See* Exhibit 1 at 34-36. Likewise, he has no formal training or experience as an emergency room nurse. *Id.* Finally, Dr. Rubenstein

**MEMORANDUM IN SUPPORT OF MOTION IN LIMINE TO LIMIT DEFENDANT'S EXPERTS TO ONLY TESTIFY WITHIN THE SCOPE OF THEIR EXPERTISE**
*Allen v. USA,* Case No. 3:04-CV-0131-JKS

Page 2 of 10

admitted at his deposition that he has no direct familiarity with ANMC's policies and procedures and no familiarity with the logistics of treating aneurysm patients *in Anchorage.* Exhibit 1 at 72-73, 101-02; 183-84.

### B. Dr. Michael Levy

Defendant retained Dr. Levy, an Anchorage emergency room physician, to testify regarding the standard of care for emergency room diagnosis and care as well as procedures and protocols for treating patients in Anchorage who may need to be evacuated to Seattle for treatment. Like Dr. Rubenstein, Dr. Levy also seeks to offer expert testimony in areas outside his expertise. Specifically, Dr. Levy offers testimony regarding: (1) Mr. Allen's neurological prognosis had he been properly diagnosed; and (2) the standard of care for nurses in the emergency room. Specifically, Dr. Levy stated in his report that "there is no reason to believe that even under the 'best of circumstances' Mr. Allen would have survived this catastrophic event", and testified in his deposition that an advanced nurse practitioner should be held to a different standard of care than that of an emergency room physician. *See* Exhibit 2, Excerpt of Dr. Levy's Deposition, at 53.

Regarding Dr. Levy's proffered neurological testimony, he freely admitted at his deposition that he has limited experience with subarachnoid hemorrhages, no expertise in neurosurgery, and that he "cannot render an opinion, as an expert, on the actual outcome of this case and how the initial care would have impacted that." Exhibit 2 at 31, 31-33, 53, 57. Further, he stated that he would not be qualified to state an opinion

**MEMORANDUM IN SUPPORT OF MOTION IN LIMINE TO LIMIT DEFENDANT'S EXPERTS TO ONLY TESTIFY WITHIN THE SCOPE OF THEIR EXPERTISE**
*Allen v. USA,* Case No. 3:04-CV-0131-JKS

Page 3 of 10

regarding the status of Mr. Allen's bleeding on the day in question, and that his statement "there is no reason to believe that even under the 'best of circumstances' he would have survived this catastrophic event" was outside the scope of his expertise. *Id.* at 172-75. Indeed, Dr. Levy also testified that he did not know whether Anchorage neurosurgeons would have been involved in Mr. Allen's care if he was properly diagnosed. *Id*. at 190-91.

Dr. Levy's training and experience as an emergency room physician do not qualify him to testify regarding the standard of care for *nurses*. Dr. Levy may offer testimony on the overall standard of care a hospital emergency room owes its patients, but cannot foray into the proper actions of other professionals working in the emergency room. Indeed, he admitted in his deposition that "I'm not an expert on the training of nurse practitioners." Exhibit 2 at 53-54.

## III.  ARGUMENT

### A.  Legal Standard

Under the Federal Tort Claims Act (FTCA), the law of the state where the injury occurred governs liability.[1] Admissibility of expert testimony, however, is governed by Rule 702 of the Federal Rules of Evidence and the Supreme Court's decisions in interpreting Rule 702.[2] Thus, the admissibility of medical testimony here is governed

---

[1] *See* 28 U.S.C. § 1346(b).

[2] *See Sullivan v. United States Dep't of Navy*, 365 F.3d 827 (9th Cir. 2004); *see also Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940 (7th Cir. 2005) (noting that federal courts must follow federal rules of evidence, and while state law can govern

**MEMORANDUM IN SUPPORT OF MOTION IN LIMINE TO LIMIT DEFENDANT'S EXPERTS TO ONLY TESTIFY WITHIN THE SCOPE OF THEIR EXPERTISE**
*Allen v. USA,* Case No. 3:04-CV-0131-JKS

Page 4 of 10

not by Alaska law, but by the Supreme Court's decision in *Kumho Tire Co., Ltd. v. Carmichael*,[3] which extended its decision in *Daubert v. Merrell Dow Pharmaceuticals Co.*,[4] to govern the admission of not only scientific, but also "technical" and "other specialized knowledge."[5] Defendant thus has the burden of establishing by a preponderance of the evidence that Dr. Rubenstein's proffered testimony is both reliable and relevant.[6] To satisfy the reliability requirement, the government must show that its medical experts are qualified to render their opinions and that these opinions are well supported.[7] This Court has discretion to exclude expert testimony under *Daubert* and *Kumho Tire*.[8]

---

relevancy, admission and privilege under Rules 401, 403 and 501, Rule 702 and *Daubert* apply in all federal cases).

[3] 526 U.S. 137, 141 (1999).

[4] 509 U.S. 579 (1993).

[5] The Alaska Supreme Court has rejected *Kumho Tire*, holding that in Alaska, *Daubert* standards only apply to expert testimony based on the scientific method. *See Marron v. Stromstand*, 123 P.3d 992 (Alaska 2005). This decision, however, is inapplicable here.

[6] *See Sullivan*, 365 F.3d at 833.

[7] *See Daubert* 509 U.S. at 589-90.

[8] *See Sullivan,* 365 F.3d at 832.

MEMORANDUM IN SUPPORT OF MOTION IN LIMINE TO LIMIT DEFENDANT'S
EXPERTS TO ONLY TESTIFY WITHIN THE SCOPE OF THEIR EXPERTISE
*Allen v. USA,* Case No. 3:04-CV-0131-JKS

### B. Dr. Rubenstein and Dr. Levy Should Be Limited to Testifying Within the Scope of Their Expertise.

As discussed above, Dr. Rubenstein and Dr. Levy seek to stray beyond the scope of their expertise and offer expert testimony on topics where they have no formal training or experience. Such expert testimony violates the standards set forth in *Daubert* and *Kumho Tire* and should therefore be excluded by this Court in exercising its function as "gate keeper."

The Seventh Circuit addressed the issue of an expert testifying outside the scope of their expertise in *Dura Automotive Systems of Indiana v. CTS Corporation*.[9] At issue in that litigation was whether groundwater from a plastics plant seeped into a nearby well field, such that the plant should be partially liable for contamination clean-up costs. The plant raised a *Daubert* objection to the testimony of an expert hydrogeologist who offered testimony that groundwater from the plant reached the well field because the expert admitted he was not an expert in mathematical models of groundwater flow but rather relied on the modeling done by other employees in his firm. Plaintiff attempted to save the expert's testimony by offering affidavits of the employees who did the modeling but the district court struck them because they were filed well after the deadline for filing expert reports. The district court then concluded that without the

---

[9] 285 F.3d 609 (7th Cir. 2002)

**MEMORANDUM IN SUPPORT OF MOTION IN LIMINE TO LIMIT DEFENDANT'S
EXPERTS TO ONLY TESTIFY WITHIN THE SCOPE OF THEIR EXPERTISE**
*Allen v. USA,* Case No. 3:04-CV-0131-JKS

affidavits, the expert's report was inherently unreliable and thus the expert could not testify.[10]

The Seventh Circuit affirmed. The Court analogized the case to a thoracic surgeon testifying in a medical malpractice case that the decedent died because the defendant radiologist negligently failed to diagnose the decedent's lung cancer until it was too advanced for surgery. The Court stated, "[t]he surgeon would be competent to testify that the cancer was too advanced for surgery, *but in offering the additional and critical judgment that the radiologist should have discovered the cancer sooner, he would be at best, just parroting the opinion of an expert in radiology*."[11] The Court concluded that, "[t]he *Daubert* test must be applied with due regard for the specialization of modern science. A scientist, however well credentialed he may be, is not permitted to be the mouth piece of a scientist in a different specialty."[12]

Similarly, other courts have limited expert testimony to the scope of the expert's actual expertise.[13] For example, in *Wright v. United States*,[14] plaintiff brought a medical malpractice action under the FTCA alleging that he suffered lower back pain and

---

[10] *See id.* at 614.

[11] *Id.* at 613 (emphasis added).

[12] *Id.* at 614*; see also Whiting v. Boston Edison Co*., 891 F.Supp. 12, 24 (D. Mass. 1995) ("Just as a lawyer is not by general education qualified to give an expert opinion on every subject of the law, so too a scientist or medical doctor is not presumed to have expert knowledge about every conceivable scientific principle or disease.").

[13] In Georgia, this principle has been codified in O.C.G.A. 24-9-67.1 which provides specific criteria regarding the qualifications of an expert testifying regarding medical and other professional malpractice.

[14] 280 F.Supp.2d 472 (M.D. N.C. 2003).

**MEMORANDUM IN SUPPORT OF MOTION IN LIMINE TO LIMIT DEFENDANT'S EXPERTS TO ONLY TESTIFY WITHIN THE SCOPE OF THEIR EXPERTISE**
*Allen v. USA,* Case No. 3:04-CV-0131-JKS

numbness due to negligent handling of prostate surgery at a veteran's medical center. Plaintiff offered expert medical testimony from a doctor who served as medical director for an external peer review body that oversaw and assessed quality of care in 171 Veterans administration hospitals. The Court, however, prevented the expert from testifying because this expertise was insufficient to permit him to testify regarding the proper padding of a patient for prostate surgery, reasoning that this type of testimony required specific clinical expertise the doctor lacked in his peer review position.[15] Similarly in *Alexander v. Smith & Nephew, P.L.C.*,[16] the Court rejected proffered expert medical testimony that a spinal implant caused plaintiff's injury where the medical expert was a family practice physician who had served on a worker's compensation board but had no *orthopedic* expertise. The Court there stated that "[a] blanket qualification for all physicians to testify as to anything medically-related would contravene the Court's gate-keeping functions."[17]

Here, defendant likewise seeks to have its medical experts testify on numerous medically-related topics, regardless of whether the topic relates to their specific area of expertise. Indeed, Dr. Rubenstein, a clinical neurologist seeks to testify regarding

---

[15] *See id.* at 477-79.

[16] 98 F.Supp.2d 1299 (N.D. Okla. 2000).

[17] *Id.* at 1304*; see also Medalen v. Tiger Drylac USA, Inc*., 269 F.Supp.2d 1118 (D. Minn. 2003) (permitting medical toxicology expert to testify whether a known substance is capable of causing cancer but not into the etiology of basal cell carcinoma because expert not a medical doctor and rejecting expert testimony of medical doctor regarding causation of plaintiff's cancer where expert had no expertise in etiology of cancer).

**MEMORANDUM IN SUPPORT OF MOTION IN LIMINE TO LIMIT DEFENDANT'S EXPERTS TO ONLY TESTIFY WITHIN THE SCOPE OF THEIR EXPERTISE**
*Allen v. USA,* Case No. 3:04-CV-0131-JKS

diagnostic procedures in the emergency room and Dr. Levy, an emergency room physician, seeks to testify regarding Mr. Allen's neurological prognosis. And both doctors believe they can opine on the standard of care applicable to those in an entirely different profession – advanced nurse practitioners.[18] Allowing these experts to stray past the boundaries of their expertise is antithetical to the principles set forth in *Daubert* and *Kumho Tire* and the fact that these principles must be applied with "due regard for the specialization of modern science."[19]

## IV. CONCLUSION

For the above reasons, plaintiff respectfully requests this Court to order that defendant's medical experts be restricted to only offering expert medical testimony within the scope of their expertise. Specifically, plaintiff seeks an order stating:

- Dr. Rubenstein should be restricted from testifying regarding the standard of care for diagnosis and treatment in an emergency room setting and from testifying regarding the logistics of treating emergency neurological conditions *in Anchorage, Alaska*;

- Dr. Levy should be restricted from testifying regarding Mr. Allen's neurological prognosis and chances for survival; and

---

[18] Allowing both Dr. Rubenstein and Dr. Levy to testify regarding the standard of care applicable to advanced nurse practitioners would also be cumulative and unnecessary and thus excludable under Fed. R. Evid. 403.

[19] *See Dura Automotive*, 285 F.3d at 614.

**MEMORANDUM IN SUPPORT OF MOTION IN LIMINE TO LIMIT DEFENDANT'S EXPERTS TO ONLY TESTIFY WITHIN THE SCOPE OF THEIR EXPERTISE**
*Allen v. USA,* Case No. 3:04-CV-0131-JKS

Page 9 of 10

- Dr. Rubenstein and Dr. Levy should both be restricted from testifying regarding the standard of care applicable to an advanced nurse practitioner.

|  |  |
|---|---|
| | ASHBURN & MASON, P.C.<br>Attorneys for Plaintiff |
| DATED:   11/13/06 | /s/   Donna J. McCready<br>1227 West Ninth Avenue, Suite 200<br>Anchorage, Alaska 99501<br>Phone: (907) 276-4331<br>Fax: (907) 277-8235<br>E-mail: djm@anchorlaw.com<br>Alaska Bar No. 9101003 |

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of November, 2006, a copy of the foregoing Motion In Limine to Limit Defendant's Experts To Only Testify within the Scope of Their Expertise was served electronically on Gary Guarino.

/s/ Donna J. McCready

P:\Clients\10194\Pleadings\Memo re Expert Scope.doc

ASHBURN & MASON P.C.
LAWYERS
1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331 · FAX 907.277.8235

**MEMORANDUM IN SUPPORT OF MOTION IN LIMINE TO LIMIT DEFENDANT'S EXPERTS TO ONLY TESTIFY WITHIN THE SCOPE OF THEIR EXPERTISE**
*Allen v. USA,* Case No. 3:04-CV-0131-JKS

Page 10 of 10