NELSON P. COHEN
United States Attorney

GARY M. GUARINO
Assistant U.S. Attorney
222 West Seventh Avenue, #9
Anchorage, Alaska  99513-7567
Phone: (907) 271-5071
Fax: (907) 271-2344
E-mail: gary.guarino@usdoj.gov

Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| KIMBERLY ALLEN, Personal Representative of the Estate of TODD ALLEN, Individually, on Behalf of the Estate of TODD ALLEN, and On Behalf of the Minor Child, PRESLEY GRACE ALLEN<br><br>    Plaintiff,<br><br> v.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant. | Case No. 3:04-cv-0131-JKS<br><br>**UNITED STATES' OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO LIMIT DEFENDANT'S EXPERTS TO ONLY TESTIFY WITHIN THE SCOPE OF THEIR EXPERTISE** |

## INTRODUCTION

This case involves Plaintiff's claims that the Defendant negligently failed to

diagnose Todd Allen with subarachnoid hemorrhage (bleeding from a cerebral aneurysm)

when Allen presented at the Alaska Native Medical Center (ANMC) emergency care clinic on the morning of April 19, 2003. Some of the disputed medical issues include the nature of Allen's symptoms (long-term chronic pain versus aneurysm), the diagnosis and treatment of chronic pain and subarachnoid hemorrhage (SAH), and whether Allen could have been diagnosed and medevaced for effective treatment before his catastrophic SAH and irreversible coma, 6 to 8 hours later in the afternoon of April 19, 2003.

Plaintiff has filed a motion in limine seeking to preclude or limit the testimony of two of the Defendant's medical experts: **Dr. Michael Levy**, an Anchorage emergency physician, certified in emergency and internal medicine, with extensive experience as a medical director for emergency and medevac services in Alaska,[1] and **Dr. Richard Rubenstein**, a neurologist with many years of experience in emergency medical care for patients with neurological conditions including SAH, cerebral aneurysm, and traumatic brain injury.[2] The United States opposes Plaintiff's motion on the following grounds.

First, Dr. Levy and Dr. Rubenstein have more than sufficient medical knowledge, experience, training, and education to offer expert testimony on the issues regarding the diagnosis of Allen's symptoms and the medical treatment he received at ANMC, the procedures and time required for diagnostic testing and medevac services in Anchorage, and the lack of fault or causation for Allen's catastrophic SAH (bleeding aneurysm) and

---

[1] Exhibit A, Dr. Levy Deposition pp. 9, 12-14, 21-23; Exhibit B, Curriculum Vitae: Michael Levy, M.D.

[2] Exhibit C, Dr. Rubenstein Deposition pp. 7, 13, 34-39.

Allen v. USA
3:04-cv-0131-JKS                           2

coma only 6 to 8 hours after he left ANMC on April 19.  Rule 702 of the Federal Rules of Evidence; <u>United States v. Vallejo</u>, 237 F.3d 1008, 1019 (9th Cir. 2001).

Dr. Levy is certified in emergency and internal medicine.  He has worked as an emergency physician at the Alaska Regional Hospital since 1990.  He treated SAH patients during his medical residency and he has treated patients with aneurysms and SAH as an emergency physician.  He is experienced in the diagnosis of SAH and he has trained emergency room staff regarding the symptoms and diagnosis of SAH.  He has admitted, observed, and conducted diagnostic testing for patients with SAH and he has consulted with neurosurgeons regarding the treatment for these patients.  He has experience with the symptoms and diagnosis for chronic pain patients and with the greater prevalence of chronic pain patients in Anchorage.[3]

Dr. Levy has been the Medical Director for the Paramedic Academy in Anchorage (emergency medical technicians or EMTs) and for the Anchorage Fire Department emergency medical services ("areawide EMS").  He was the Medical Director for Aeromed International, a medevac service transporting patients from remote Alaska into Anchorage and from Anchorage to Seattle.  He provided medical supervision and established protocols and standing orders for the medevac services, he reviewed all of the medevac missions, and he provided training for the flight crews (paramedics and nurses). He is familiar with the procedures for transporting patients in Anchorage and to Seattle.

---

[3] Exhibit A, Dr. Levy Deposition pp. 28-31, 36-39, 42-43, 64-65, 82-83; Exhibit B..

He worked as an emergency physician at ANMC (in 1989-90) and he has experience with the treatment and medevac of patients from ANMC.[4]

Dr. Rubenstein is a neurologist with sub-specialties in electrophysiology, traumatic brain injuries, and cognitive neurology. He has experience treating patients with "neurologic diseases" such as SAH, intracerebral hemorrhage, and traumatic brain injury. During 1978 to 1997, he was a neurologist for hospitals in the San Francisco Bay area. He was called to hospital emergency rooms many times to assess and treat patients who had presented with neurologic conditions and with headaches. He helped to train emergency room physicians regarding the assessment of patients with neurological symptoms. He has treated patients with SAH due to ruptured aneurysms and he has monitored their care, often in conjunction with neurosurgeons. He is familiar with the symptoms and diagnostic testing for patients with SAH and with the neurosurgical procedures that are used to treat aneurysms. In addition, Dr. Rubenstein was an assistant professor of neurology (University of California, Davis) and then an assistant clinical professor of neurology (University of California, San Francisco) from 1976 to 1994.[5]

Given their medical training and experience, Dr. Levy and Dr. Rubenstein have the specialized knowledge and experience to testify on the emergency room diagnosis of patients with chronic pain, SAH, aneurysms, or neurologic conditions, and on the nature of Allen's chronic pain symptoms and the reasonableness of his diagnosis and treatment

---

[4] Exhibit A, Dr. Levy Deposition pp. 9, 12-16, 21-27, 188-89; Exhibit B.

[5] Exhibit C, Dr. Rubenstein Deposition pp. 12-14, 20, 34-40, 42-44, 56-57, 64-66.

at ANMC's urgent care clinic, and on the nature of the diagnostic testing and treatment that Allen would have received if he had been suspected of having an aneurysm or SAH.

Dr. Levy, based on his experience with paramedic and medevac services, is qualified to testify regarding the procedures and time required to transport a patient like Allen from ANMC to Alaska Regional Hospital (for diagnostic testing not available at ANMC)[6] and then to Seattle for neurosurgical care, again assuming that Allen had been suspected and ultimately diagnosed as having an aneurysm and SAH on April 19.

Second, experts are entitled to rely on their prior knowledge and experience and on information that is obtained and reviewed during the case. Rule 703 of the Federal Rules of Evidence; United States v. Sandoval-Mendoza, 472 F.3d 645, 655 (9th Cir. 2006). Plaintiff's argument that Dr. Rubenstein has no "direct familiarity" with ANMC's policies and procedures or with the "logistics of treating aneurysm patients in Anchorage," is legally irrelevant.[7] Dr. Levy and Dr. Rubenstein can rely on information from ANMC regarding the unavailability of certain diagnostic tests and neurosurgical services at ANMC in 2003 and regarding ANMC's procedures for transporting patients suspected with SAH or aneurysms to Seattle for neurosurgical care.[8] Dr. Levy is entitled to rely on his prior knowledge and on other information he obtained that in 2003 there

---

[6] In 2003, ANMC did not have the capacity to perform cerebral angiograms and it had to transfer patients to Alaska Regional Hospital to have angiograms performed to diagnose cerebral aneurysms. Exhibit D, Dr. Brodsky Deposition, pp. 6-7, 94-96.

[7] Plaintiff's Memorandum In Support Of Motion In Limine pp. 2-3.

[8] Exhibit D, Dr. Brodsky Deposition, pp. 94-96.

were only three neurosurgeons in Alaska and that they did not perform emergency surgery for patients with aneurysms, such as Allen.[9]  Similarly, Dr. Rubenstein is entitled to rely on the report and opinions of Dr. Levy regarding the time it would take to transport Allen to Alaska Regional Hospital for diagnostic testing and then medevac Allen to Seattle for neurosurgical care.  Dura Automotive Systems of Indiana v. CTS Corp., 285 F.3d 609, 612-13 (7th Cir. 2002) (it is common for an expert to base his opinion in part on the report or opinions of another expert, based on knowledge not possessed by the first expert).

Thus, Dr. Levy and Dr. Rubenstein are able to offer expert testimony as to whether Allen would have been diagnosed with SAH or an aneurysm during the morning or afternoon of April 19 and whether the diagnostic studies, evaluation, and medevac for neurosurgical care could have been completed before Allen suffered his catastrophic SAH and fatal coma by the late afternoon of April 19.[10]

Third, Plaintiff argues that Dr. Levy and Dr. Rubenstein should not be allowed to testify regarding the standard of care for the diagnosis of Allen's symptoms (chronic pain as opposed to SAH or aneurysm) by the ANMC urgent care nurse, Advanced Nurse Practitioner (ANP) Donna Fearey.[11]  Plaintiff's objection is more than a little ironic since she intends to offer expert testimony on these same issues from Dr. Frank Mannix, an emergency physician.  Plaintiff intends to have Dr. Mannix testify as "an expert in

---

[9] Exhibit A, Dr. Levy Deposition, pp. 190-92.

[10] Exhibit C, Dr. Rubenstein Deposition pp. 179-84.

[11] Plaintiff's Memorandum In Support of Motion In Limine pp. 2-3.

emergency medicine and, therefore, testifying about the standard of care." Dr. Mannix apparently will testify that the same standard of care (for diagnosis of SAH) applies to emergency physicians and to nurse practitioners.[12] Thus, Plaintiff's argument to preclude testimony from the United States' experts is one-sided and unreasonable. As discussed above, Dr. Levy and Dr. Rubenstein are qualified to testify regarding the symptoms and diagnosis for chronic pain patients like Allen.

One of Plaintiff's claims is that Allen should have been seen by an emergency physician rather than by a nurse practitioner and that an emergency physician would have suspected or diagnosed a SAH or aneurysm. To respond to this claim, Defendant is entitled to present testimony from Dr. Levy and Dr. Rubenstein regarding their assessment of Allen's symptoms and diagnosis. To the extent that they support ANP Fearey's assessment (chronic pain) and treatment of Allen, this would contradict Plaintiff's claims regarding a hypothetical diagnosis by an emergency physician.

Further, if the diagnostic standard of care for an emergency physician (or a neurologist) is higher than for a nurse practitioner, expert testimony from Dr. Levy and Dr. Rubenstein is still relevant. In summary, to the extent that Dr. Levy and Dr. Rubenstein, with their greater medical training and experience, do not find fault with ANP Fearey's diagnosis, this is relevant evidence that ANP Fearey acted reasonably in her assessment and treatment of Allen at ANMC on April 19. If ANP Fearey satisfied the

---

[12] Exhibit E, Dr. Mannix Deposition pp. 24, 47, 128-29.

diagnostic criteria for an emergency physician and neurologist, then she certainly satisfied the standard of care for a nurse practitioner.

Fourth, the cases cited by Plaintiff accurately state the legal standards for the admissibility of expert testimony under Evidence Rules 702 and 703.[13]  However, the facts, evidence, and rulings in those cases are not remotely applicable to the facts and the United States' medical expert witnesses in this case.

In Dura Automotive Systems of Indiana, Inc. v. CTS Corp., 285 F.3d 609, 612-13 (7th Cir. 2002), the court recognized that it is common for one expert to base his opinion in part on the report or opinions of another expert with expertise or knowledge not possessed by the first expert.  The Rule 703 problem in that case was that the party offering the "first expert" failed to timely disclose or produce the underlying affidavits from the "other experts" during pre-trial discovery.  As a result, the district court granted the defendant's motion to strike the untimely filed affidavits.  Without these stricken affidavits, the "first expert" could not properly support or offer his expert opinions, which relied for their validity on the excluded affidavits. Id. at 612-16.  No such "excluded evidence" problems exist in this case.  As discussed above, Dr. Levy and Dr. Rubenstein are entitled to rely on their extensive experience with the emergency room diagnosis and treatment of patients with chronic pain, aneurysms or SAH, and other conditions.  In

---

[13] Plaintiff's Memorandum In Support Of Motion In Limine pp. 6-8.

Allen v. USA
3:04-cv-0131-JKS                                8

addition, they can rely on their review of the medical records, deposition testimony, and other information that has been obtained during this case.

Wright v. United States, 280 F.Supp.2d 472 (M.D. N.C. 2003) involved claims that the plaintiff's back had been injured during prostrate surgery due to the alleged improper positioning and padding of the plaintiff's body on the surgical table.  Unfortunately for the plaintiff, his medical expert (a quality assurance/risk management director for the Department of Veterans' Affairs)  had no training or experience in urology, neurology, or surgery.  Further, the expert admitted that he had no clinical expertise regarding the standard of care for positioning and padding a patient during prostate surgery.  He had no surgical training after graduating from medical school (almost 40 years earlier) and his last clinical experience had been about 20 years before, when he had supervised influenza vaccinations.  Given the expert's admitted lack of relevant medical expertise, the district court properly and understandably rejected the expert's  testimony regarding the standard of care for plaintiff's prostate surgery.  Id. at 478-480.

In contrast, as discussed above, Dr. Levy and Dr. Rubenstein have extensive medical training and clinical experience regarding the symptoms, diagnosis, and treatment of patients who present in emergency room settings with symptoms of chronic pain, aneurysms, SAH, or neurologic conditions.  Dr. Levy has had extensive experience as a Medical Director for emergency paramedic and medevac services in Anchorage and Alaska.  The relevant qualifications and experience of the United States' experts are in no way comparable to the plaintiff's  "medical expert" in the Wright case.

In <u>Alexander v. Smith & Nephew, P.L.C.</u>, 98 F.Supp.2d 1299 (N.D. Okl. 2000) the plaintiff's medical expert (a family physician) attempted to offer opinion testimony that the plaintiff was injured by a spinal orthopedic device that had been implanted during spinal surgery. Again unfortunately for plaintiff, her medical expert had no training or experience in orthopedics, spinal surgery, spinal fusion with implant devices, neurology, or other medical areas related to the opinions that the expert was attempting to present. The district court noted that the plaintiff made no attempt to demonstrate the expert's qualifications in these specialized areas and claimed that the expert's medical degree was "qualification enough." <u>Id</u>. at 1304-05. Further, the court noted that the expert failed to establish the reliability of his methodology for determining the alleged causal connection between plaintiff's injuries and the spinal implant device. Given these fatal deficiencies in the expert's qualifications and analysis, the district court excluded the expert's proposed opinions and testimony under Evidence Rule 702. <u>Id</u>. at 1305-06.

Again, the qualifications, specialized training, and clinical experience of Dr. Levy and Dr. Rubenstein are not remotely comparable to the excluded expert in the <u>Alexander</u> case. Plaintiff has cited extreme cases of patently unqualified "experts" that are neither controlling or even persuasive authority for Plaintiff's motion in limine in this case.[14]

<u>Fifth</u>, Plaintiff's motion has not raised or discussed any claims or arguments that Dr. Levy and Dr. Rubenstein are offering or relying on non-scientific or "junk science"

---

[14] <u>Compare</u> <u>Sandoval-Mendoza</u>, 472 F.3d at 654-55; <u>Sullivan v. United States Dep't of the Navy</u>, 365 F.3d 827, 833-34 (9th Cir. 2004)

theories for their medical analysis and opinions.  Thus, there is no challenge to their testimony under the "Daubert factors" for assessing the reliability of scientific expert testimony.[15]  Plaintiff's motion offers no analysis of these Daubert factors.

Finally, given the complex medical issues in this case, it would be premature to preclude or limit the testimony from the United States' experts prior to the Court's review of the evidence at trial regarding Plaintiff's claims and the government's defenses.

## CONCLUSION

For the reasons set out above, the United States respectfully requests that the Court deny Plaintiff's motion in limine regarding the United States' medical experts.

RESPECTFULLY SUBMITTED this 7th day of March, 2007.

> NELSON P. COHEN
> United States Attorney
>
> s/Gary M. Guarino
> GARY M. GUARINO
> Assistant U.S. Attorney
> 222 West 7th Ave., #9, Rm. 253
> Anchorage, AK 99513-7567
> Phone: (907) 271-5071
> Fax: (907) 271-2344
> E-mail: gary.guarino@usdoj.gov

---

[15] Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993); Rule 702 of the Federal Rules of Evidence, Advisory Committee Notes to 2000 Amendments.

**CERTIFICATE OF SERVICE**

I hereby certify that on March 7, 2007,
a copy of the foregoing UNITED STATES'
OPPOSITION TO PLAINTIFF'S MOTION
IN LIMINE TO LIMIT DEFENDANT'S EXPERTS
TO ONLY TESTIFY WITHIN THE SCOPE OF
THEIR EXPERTISE was served electronically on
Donna McCready.


s/ Gary M. Guarino