Donna J. McCready
Friedman, Rubin & White
1126 Highland Avenue
Bremerton, WA  98337
Telephone:  (360) 782-4300
Facsimile:  (360) 782-4358
E-mail:  dmccready@frwlaw.us

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| KIMBERLY ALLEN, Personal Representative of the Estate of TODD ALLEN, Individually, on behalf of the Estate of TODD ALLEN, and on behalf of the Minor Child, PRESLEY GRACE ALLEN,<br><br>        Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>        Defendant. | Case No. 3:04-CV-0131-JKS<br><br>**PLAINTIFF'S BRIEF REGARDING COMPENSATION** |

**I.    INTRODUCTION**

This case was tried to the Court starting on June 25, 2007 with closing arguments on liability and causation conducted on July 3rd. This Court issued its Findings of Fact, Conclusions of Law and Preliminary Decision and Order on August 28, 2007 ["Court's

PLAINTIFF'S BRIEF REGARDING COMPENSATION
*Allen v. USA,* Case No. 3:04-CV-0131-JKS
Page 1 of 15

**FRIEDMAN, RUBIN & WHITE**
1126 Highland Avenue
Bremerton, Washington  98337
Phone:  (360) 782-4300
Facsimile:  (360) 782-4358

Decision," Docket No. 116]. As noted in the Court's Decision, the Government has previously stipulated to the economic damages[1] and the only issue that remains is determining the amount of the Allens' non-economic damages. [Docket No. 116 at 2]

## II.   NON-ECONOMIC LOSSES

The general damages suffered by the statutory beneficiaries of Mr. Allen's estate relating to Mr. Allen's wrongful death are limited by AS 09.17.010, which at the time of Mr. Allen's death provided:

> (a) In an action to recover damages for personal injury or wrongful death, all damage claims for noneconomic losses shall be limited to compensation for pain, suffering, inconvenience, physical impairment, disfigurement, loss of enjoyment of life, loss of consortium, and other nonpecuniary damage.
>
> (b) Except as provided under (c) of this section, the damages awarded by a court or a jury under (a) of this section for all claims, including a loss of consortium claim, arising out of a single injury or death may not exceed $400,000 or the injured person's life expectancy in years multiplied by $8,000, whichever is greater. AS 9.17.010.

As previously briefed by the plaintiff [Docket No. 79], more than one cap likely applies in this case.

### A.   Three Separate Non-Economic Damage Caps May Apply to The Wrongful Death, Survivorship and NIED Claims.

#### 1.   **Wrongful Death**.

Alaska's wrongful death statute, AS 9.55.580, provides in pertinent part that

---

[1] The parties stipulated that the economic losses to Mrs. Allen and Presley Grace Allen are $1,126,467.50. [Docket No. 91] *See* Attachment A.

PLAINTIFF'S BRIEF REGARDING COMPENSATION
*Allen v. USA,* Case No. 3:04-CV-0131-JKS
Page 2 of 15

**FRIEDMAN, RUBIN & WHITE**
1126 Highland Avenue
Bremerton, Washington 98337
Phone: (360) 782-4300
Facsimile: (360) 782-4358

     (a) ….. the damages therein shall be the damages the court … may consider fair and just. The amount recovered, if any, shall be exclusively for the benefit of the decedent's spouse and children when the decedent is survived by a spouse or children, or other dependents. … When the plaintiff prevails, the trial court shall determine the allowable costs and expenses of the action …. The amount recovered shall be distributed only after payment of all costs and expenses of suit and debts and expenses of administration.

     (b) The damages recoverable under this section shall be limited to those which are the natural and proximate consequence of the negligent or wrongful act or omission of another.

     (c) In fixing the amount of damages to be awarded under this section, the court … shall consider all the facts and circumstances and from them fix the award at a sum which will fairly compensate for the injury resulting from the death. In determining the amount of the award, the court … shall consider but is not limited to the following:

     (1) deprivation of the expectation of pecuniary benefits to the beneficiary or beneficiaries, without regard to age thereof, that would have resulted from the continued life of the deceased and without regard to probable accumulations or what the deceased may have saved during the lifetime of the deceased;

     (2) loss of contributions for support;

     (3) loss of assistance or services irrespective of age or relationship of decedent to the beneficiary or beneficiaries;

     (4) loss of consortium;

     (5) loss of prospective training and education;

     (6) medical and funeral expenses.

The pecuniary losses, the loss of contributions for support and the funeral expenses are included in the economic losses that have been stipulated to by the parties.

PLAINTIFF'S BRIEF REGARDING COMPENSATION
*Allen v. USA,* Case No. 3:04-CV-0131-JKS
Page 3 of 15

**FRIEDMAN, RUBIN & WHITE**
1126 Highland Avenue
Bremerton, Washington 98337
Phone: (360) 782-4300
Facsimile: (360) 782-4358

As detailed in Mrs. Allen's testimony at trial,[2] her loss of consortium claim itself, let alone Presley Grace Allen's loss of her father and both of their losses of prospective training and education, should be compensated in an amount greater than the statutory maximum of $400,000. Therefore, Mrs. Allen respectfully argues that, at the very least, this Court order the Government to compensate her and Presley, the statutory beneficiaries of Mr. Allen's estate, the maximum allowed by law for their general damages under the wrongful death statute.

### 2. Survivorship Claim.

The wrongful death claim is a separate claim from the survivorship claim and the Court may apply a separate cap. By the very language of AS 9.17.010, the Alaska legislature recognized that personal injury claims are distinct from death claims when it included language limiting damages using the disjunctive "or" ("arising out of a single injury or death"). If the legislature meant to include personal injuries and death, it could have done so. *See, e.g.*, *Sander v. Geib, Elston, Frost Professional Ass'n.*, 506 N.W.2d 107, 127 (S.D. 1993).[3]

---

[2] Mr. and Mrs. Allen had been together as a couple for a number of years and were married on June 8, 2002. They were best friends in addition to being in love and married. Mrs. Allen was pregnant with their first child at the time of Mr. Allen's death. Furthermore, the testimony at trial was that Mr. Allen was a young, hard-working, active, fit and fun-loving person. He loved children and mentored kids in Native Youth Olympics. He would have had much to offer Presley Grace and unfortunately, due to the Government's negligence, Presley will not experience the special bond that is known to exist between a father and daughter.

[3] In *Sander*, the South Dakota Supreme Court, in holding that the state's statutory damages cap, which applied to "any action for damages for personal injury *or* death alleging malpractice…", applied separately to a wrongful death claim and survivorship claim, explained that "[w]e read 'or' to mean the legislature intended to recognize the differences in the two causes of action and to apply the cap separately to each." 506 N.W. at 127. The Court further explained that "[w]e are further persuaded to this interpretation because to do so gives effect to

PLAINTIFF'S BRIEF REGARDING COMPENSATION
*Allen v. USA,* Case No. 3:04-CV-0131-JKS
Page 4 of 15

**FRIEDMAN, RUBIN & WHITE**
1126 Highland Avenue
Bremerton, Washington 98337
Phone: (360) 782-4300
Facsimile: (360) 782-4358

This reading of AS 09.17.010 comports with the separate legal distinction between survivorship and wrongful death claims. In 2005, the Alaska Supreme Court clarified this distinction when it explained that although a wrongful death action "is based on the injury caused to the decedent, a wrongful death action brought by surviving beneficiaries s*hould not be viewed as a derivative action; rather, it is an 'independent and distinct' cause of action.* [Citations omitted.] *The independent nature of wrongful death claims contrasts with survivorship claims, which under AS 09.55.570 are brought by a personal representative on behalf of the decedent and are plainly derivative."* *In re Estate of Maldonado*, 117 P.3d 720, 725 n.28 (Alaska 2005) (emphasis added). In other words, the Alaska Supreme Court has indicated that in cases involving survivorship claims and wrongful death claims, there are necessarily two distinct and independent actions with two separate and distinct injuries, the injury to the decedent prior to his death and the injury to the statutory beneficiaries that arises as a result of and after his death.

In *Maldonado*, the Alaska Supreme Court addressed whether proceeds from a wrongful death action were property of the estate of the decedent (who died of asbestosis) or his surviving spouse for purposes of Alaska's elective share law. The Court concluded that, because the cause of action for wrongful death did not arise until after the decedent died, the widow's proceeds from the wrongful death action claim were NOT property of the augmented estate. In contrast, the court held that any damages for the survivorship claim (claims by the

---

all of the provisions of wrongful death actions, common law personal injury actions and [the statute capping damages], and makes them 'harmonious and workable.'" *Id*.

PLAINTIFF'S BRIEF REGARDING COMPENSATION
*Allen v. USA,* Case No. 3:04-CV-0131-JKS
Page 5 of 15

**FRIEDMAN, RUBIN & WHITE**
1126 Highland Avenue
Bremerton, Washington 98337
Phone: (360) 782-4300
Facsimile: (360) 782-4358

husband that arose at the time of the negligent acts that caused his personal injury) would pass through the estate and be subject to probate.

As the Court further explained:

> Alaska Statute 09.55.570 permits all causes of action held by a person to survive that person's death, and allows the action to be pursued by the personal representatives of the estate. The survival action comes into existence at the time of injury and may compensate the victim only for the period between the time of injury and the time of death. Unlike wrongful death claims, survivorship claims are wholly derivative of the decedent's pre-existing causes of action and compensate the estate only for those injuries suffered by the decedent prior to the death; the claims do not compensate the survivors for their own harms.

117 P.3d at 729. *See also Sander*, 506 N.W.2d at 127 (holding that South Dakota's statute limiting damages "in any action for damages … alleging malpractice" applied separately to survivorship claims and wrongful death claims).

Therefore, the Court may, in addition to deciding that the general damages for the wrongful death of Todd Allen would be the statutory maximum of $400,000, may decide that additional damages may be assessed for Mr. Allen's survivorship claim.

The survivor's claim would be for the pain and suffering experienced by Mr. Allen between his discharge from ANMC at 8:15 a.m. the morning of April 19, 2003[4] when his true condition was missed, until his death on April 20, 2003. On the one hand, Mr. Allen had a painful condition, a cerebral aneurysm that would have likely caused him pain even if his true condition had been diagnosed. Also, Mr. Allen went into respiratory arrest at approximately

---

[4] Please see the Stipulated Statement of Facts No. 16 contained in the Parties' Notice of Filing Joint Proposed Pretrial Order [Docket No. 86], hereinafter "Joint Filing."

PLAINTIFF'S BRIEF REGARDING COMPENSATION
*Allen v. USA,* Case No. 3:04-CV-0131-JKS
Page 6 of 15

FRIEDMAN, RUBIN & WHITE
1126 Highland Avenue
Bremerton, Washington 98337
Phone: (360) 782-4300
Facsimile: (360) 782-4358

5:11 p.m. on April 19th and apparently remained in a coma until his death on April 20th. On the other hand, because his true condition went undiagnosed, his brain progressively swelled within its finite cranial space resulting ultimately in Mr. Allen's becoming hypoxic and going into respiratory arrest. As Dr. Cantu, plaintiff's expert neurosurgeon testified, the progressive cerebral edema or brain swelling that went untreated was "severe" in Mr. Allen's case and would have "led to markedly increased intracranial pressure and undoubtedly worsening headache." Cantu Testimony at 39-40. Therefore, it is within this Court's discretion to compensate Mr. Allen's estate for the additional and unnecessary pain and suffering Mr. Allen experienced after he left ANMC, as his brain continued to swell throughout the day in response to the cerebral bleed after being told there was nothing wrong with him.

### 3.     Mrs. Allen's Negligent Infliction of Emotional Distress Claim.

Mrs. Allen amended her complaint to include a claim for negligent infliction of emotional distress based on her witnessing Mr. Allen going into respiratory arrest the afternoon of April 19th following the negligence of the emergency room providers at ANMC for which she was present. [Docket No. 28]

Ordinarily a plaintiff must allege a physical injury in order to recover emotional distress damages. *Kallstrom v. U.S.*, 43 P.3d 162 (Alaska 2002). There are two exceptions to this rule and therefore in order for Mrs. Allen to recover for a claim of negligent infliction of emotional distress, she "must have a viable 'bystander claim' or establish that" Mr. Allen's health care provider(s) owed her a "preexisting duty." *M.A. v. United States*, 951 P.2d 851, 856 (1998); *Chizmar v. Mackie*, 896 P.2d 196, 201, 203-04 (Alaska 1995). *See also Kallstrom*, 43 P.2d at

PLAINTIFF'S BRIEF REGARDING COMPENSATION
*Allen v. USA,* Case No. 3:04-CV-0131-JKS
Page 7 of 15

FRIEDMAN, RUBIN & WHITE
1126 Highland Avenue
Bremerton, Washington 98337
Phone: (360) 782-4300
Facsimile: (360) 782-4358

165-166.  In this case, while Mrs. Allen was a patient of ANMC for prenatal care,[5] she was not present at ANMC the morning of April 19, 2003 as a patient; she was there to accompany her husband who had woken her up early that morning to insist that she take him to the ANMC Emergency Department because he was in so much pain.  Mrs. Allen's claim is that of a "bystander."

A defendant who acts negligently causing serious injury to another may owe a duty to a "bystander" witnessing the serious injury or death if 1) the plaintiff is located near the scene of the incident (as opposed to someone who is a distance away); 2) the shock results from a "direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence[;]" and 3) the plaintiff is closely related to the victim.  *See Beck v. State*, 896 P.2d 105, 109 (Alaska 1992); *Tommy's Elbow Room, Inc. v. Kavorkian*, 727 P.2d 1038, 1041 (Alaska 1986).[6]

The Court on the first day of trial cited, among other cases, *Gendek v. Poblete*, 654 A.2d 970 (N.J. 1995), which involved a claim for negligent infliction of emotional distress on the part of parents due to post-birth malpractice resulting in the death of their infant son.  The case is similar to Mrs. Allen's case in that she, like the parents in *Gendek*, was unaware that the shocking and disturbing events she witnessed in the Microtel room the afternoon of April 19th was the direct result of the Government's negligence earlier that morning at ANMC.

---

[5] Defendant's Exhibit D1A at 41 (Mrs. Allen called ANMC on March 19, 2003 to set up her first prenatal visit).

[6] *See also, Ochoa v. State*, 703 P.2d 1 (Cal. 1985)(*en banc*)

PLAINTIFF'S BRIEF REGARDING COMPENSATION
*Allen v. USA,* Case No. 3:04-CV-0131-JKS
Page 8 of 15

FRIEDMAN, RUBIN & WHITE
1126 Highland Avenue
Bremerton, Washington 98337
Phone:  (360) 782-4300
Facsimile:  (360) 782-4358

Nonetheless, the court's decision in *Gendek* was governed by New Jersey precedent which apparently required that in order for a plaintiff to make out an "indirect" claim for negligent infliction of emotional distress attributable to medical malpractice, she must prove "that the victim was (1) a marital or intimate family member of the claimant, and that the claimant (2) witnessed the malpractice, (3) immediately connected or associated the malpractice with the injury, and (4) as a result, suffered severe emotional distress." *Gendek*, 654 A.2d at 974. In *Gendek*, "[n]either Mr. nor Mrs. Gendek observed any negligent act or omission that they immediately associated with Gregory's condition." *Id*. at 974-975.

In Alaska, there is no special requirement that a plaintiff claiming negligent infliction of emotional distress must not only witness the malpractice but immediately associate the malpractice with the victim's injury. First, such a requirement would be practically impossible to meet. In most medical negligence cases, the effects of the negligence are not immediately apparent and the parent or spouse of a patient may not be medically sophisticated enough to make an immediate connection between the conduct of caregivers and apparent injury to their loved one. Second, the concern of any reasonable parent or spouse at the time of a medical crisis must be for the wellbeing of their child or spouse, not whether a care giver's negligence caused the crisis. Finally, such a requirement is inconsistent with the purpose and policy of allowing negligent infliction of emotional distress claims on the part of family members who witness the shocking event of the death or serious physical injury of a loved one caused by the negligence of another. *See Ochoa v. Superior Court*, 703 P.2d 1, 8 (Cal. 1985)("we by no means suggest … that plaintiff must be aware of the tortious nature of defendant's actions.

PLAINTIFF'S BRIEF REGARDING COMPENSATION
*Allen v. USA,* Case No. 3:04-CV-0131-JKS
Page 9 of 15

**FRIEDMAN, RUBIN & WHITE**
1126 Highland Avenue
Bremerton, Washington 98337
Phone: (360) 782-4300
Facsimile: (360) 782-4358

As the court in *Mobaldi* observed, such a requirement would lead to the anomalous result that a mother who viewed her child being struck by a car could not recover because she did not realize the driver was intoxicated. *Mobaldi* [*v. Regents of University of California*], 127 Cal.Rptr. 720 (1976)." *See also Beck*, 837 P.2d at 110-111. [7] In his thoughtful dissent in *Gendek*, [8] Justice Stein explained that,

> if in a malpractice case the family member does not observe directly the act of malpractice, but directly witnesses the death or serious bodily injury resulting from the malpractice in a setting that satisfies … a traumatic emotional event, … a requirement that the observer also have witnessed and been aware of the malpractice appears to be redundant. As the court noted in *Mobaldi*, *supra*, 'it is the observation of the consequences of the negligent act and not observation of the act itself that is likely to cause trauma so severe as to result in physical injury.' [Citation omitted.]

Mrs. Allen was at the ANMC ED with her husband the morning of April 19, 2003 when he was inappropriately triaged by Nurse Ambrose and examined by Nurse Fearey. Mrs. Allen

---

[7] In *Beck*, the mother of a driver fatally injured in a car accident was six miles away from the accident and, although she rushed to the accident scene, was not allowed onto the scene by the police. The mother subsequently viewed her daughter's injuries at the hospital. 837 P.2d at 109-110. In holding that Mrs. Beck could maintain a claim for negligent infliction of emotional distress, the Alaska Supreme Court explained, "[o]ne who is thrust, either voluntarily or involuntarily, into such dramatic events and who makes a sudden sensory observation of the traumatic injuries of a close relative in the immediate aftermath of the event which produced them is no less entitled to assert a claim for his or her emotional injuries than one who actually witnessed the event. By contrast, one who learns of the injury or death of a loved one, or who observes the pain and suffering or the injuries only after a considerable period of time has elapsed since the accident, suffers a harm which, while foreseeable, policy and reason dictate the law should not regard as compensable. *Id.* at 110-11. Just as Mrs. Beck did not have an opportunity to "steel" herself before observing her daughter's injuries, Mrs. Allen had no opportunity to steel herself for the events that occurred the afternoon of April 19, 2003.

[8] 654 A.2d at 976-979.

PLAINTIFF'S BRIEF REGARDING COMPENSATION
*Allen v. USA,* Case No. 3:04-CV-0131-JKS
Page 10 of 15

**FRIEDMAN, RUBIN & WHITE**
1126 Highland Avenue
Bremerton, Washington 98337
Phone: (360) 782-4300
Facsimile: (360) 782-4358

drove her husband from the hospital and it was foreseeable that she would be with him as the consequences of the Government's agents' negligence unfolded. Mrs. Allen witnessed her husband's breathing change in the hotel room where they were staying, she saw blood coming from her husband's mouth and she witnessed him going into respiratory arrest. After trying to perform CPR on her husband under instructions given by the 911 operator, she watched paramedics trying to resuscitate him. While dealing with the acute shock of all she had witnessed while pregnant with the couple's first child, she had to make decisions regarding life support and donation of Mr. Allen's organs. She witnessed his death. Her condition at Providence that evening was such that she had to be examined by physicians to ensure her health and the health of her unborn child.

A lasting effect of Mrs. Allen's experience in the Microtel room, of lying next to her husband thinking he was okay and then watching him go into respiratory arrest, has been a perseveration on the well being of Presley Grace when she is sleeping, that goes beyond the concern of a parent of a baby and young child.

Mrs. Allen suffered a compensable injury on April 19, 2003. And because Mrs. Allen's claim for negligent infliction of emotional distress involves a separate injury from the wrongful death and survivorship causes of action, a separate damages cap would apply. *Cf. Lawrence v. State Farm*, 26 P.3d 1074, 1079 (Alaska 2001). In *Lawrence*, the Alaska Supreme Court held that parents of a child seriously injured in a car accident were entitled to separate policy limits for their claims of negligent infliction of emotional distress, explaining that these claims

PLAINTIFF'S BRIEF REGARDING COMPENSATION
*Allen v. USA,* Case No. 3:04-CV-0131-JKS
Page 11 of 15

**FRIEDMAN, RUBIN & WHITE**
1126 Highland Avenue
Bremerton, Washington 98337
Phone: (360) 782-4300
Facsimile: (360) 782-4358

"concern injuries that the claimants have suffered directly, rather than derivative injuries that resulted from an injury to another."

## III.  ALLOCATION OF COMPENSATORY DAMAGES

Any damages that the Court would attribute to Mr. Allen's survival claim would go through his estate and be distributed in accordance with Alaska's inheritance of intestate estates which would result in one-half of the proceeds going to Mrs. Allen and one-half going to Presley Grace Allen. *In the Matter of the Estate of Maldonado*, 117 P.3d 720, 729 (Alaska 2005); *Horsford v. Estate of Horsford*, 561 P.2d 722, 727 (Alaska 1977).

Any damages that the Court would attribute to Mrs. Allen's NIED claim would go directly to her as they would be compensating a direct injury to her.

The economic damages that were stipulated to by the parties which flow from Mr. Allen's wrongful death should be apportioned in accordance with *Horsford v. Estate of Horsford*, 561 P.2d 722, 727 (Alaska 1977). *See Clement v. Fulton*, 110 P.3d 927, 929 (Alaska 2005). According to Dr. Susan Shott, Mr. Allen's life expectancy at the time of his death was 40.7 years. Mrs. Allen, who was born May 16, 1970, has a life expectancy greater than 40.7 years and therefore it would be assumed that her dependency upon Mr. Allen would be for his life expectancy. Presley Grace was not yet born and so her dependency upon Mr. Allen would be assumed to be for 18 years. Under the *Horsford* analysis, approximately 69% (69.34%) of the economic losses would be allocated to Mrs. Allen and approximately 31% (30.66%) would be allocated to Presley Grace after costs and fees of the action are paid.

PLAINTIFF'S BRIEF REGARDING COMPENSATION
*Allen v. USA,* Case No. 3:04-CV-0131-JKS
Page 12 of 15

**FRIEDMAN, RUBIN & WHITE**
1126 Highland Avenue
Bremerton, Washington 98337
Phone: (360) 782-4300
Facsimile: (360) 782-4358

The *Horsford* analysis does not necessarily apply to the non-economic losses flowing from Mr. Allen's wrongful death and, therefore, the Court can allocate those losses as it deems appropriate. Nonetheless, the *Horsford* analysis provides helpful guidance to the analysis of allocation of the general damages. Both Mrs. Allen and Presley Grace have significant claims for loss of consortium and loss of education and training, however, Mrs. Allen would have lived with Mr. Allen for the remainder of his life while it would be expected that Presley Grace would at some point, after reaching the age of majority, leave the family home to live independently even while in a close relationship with her parents. Therefore, a majority of the general damages should be allocated to Mrs. Allen who will also be raising Presley and providing her with the support to navigate the world without a father.

## IV.   FEES, COSTS AND INTEREST

The award of prejudgment interest in a Federal Tort Claim Act ("FTCA") case is disallowed by statute. 28 U.S.C. § 2674. Although the award of attorneys' fees is not explicitly excluded under the FTCA, the Ninth Circuit has interpreted the Act as not waiving sovereign immunity for the purpose of a prevailing party obtaining attorney's fees. *See Anderson v. United States*, 127 F.3d 1190, 1991 (9th Cir. 1997). Recovery of certain costs is allowed.

## V.   CONCLUSION

Mrs. Allen appreciates this Court's written Findings of Fact and Conclusions of Law [Docket No. 116] and requests that, at the very least, she and her daughter are compensated

PLAINTIFF'S BRIEF REGARDING COMPENSATION
*Allen v. USA,* Case No. 3:04-CV-0131-JKS
Page 13 of 15

**FRIEDMAN, RUBIN & WHITE**
1126 Highland Avenue
Bremerton, Washington 98337
Phone: (360) 782-4300
Facsimile: (360) 782-4358

general damages for the wrongful death of Mr. Allen to the extent permitted by AS 9.17.010 ($400,000). She further contends that it is within the Court's discretion to award additional damages for Mr. Allen's survival claim and for her negligent infliction of emotional distress claims.

Prejudgment interest and attorneys' fees are disallowed by statute and Ninth Circuit precedent. Once final judgment is entered and the approval is obtained by the Alaska court pursuant to Alaska Civil Rule 90.2, Mrs. Allen would want to structure at least part of the compensatory damages with the cooperation of, and without interference from, the Government.

FRIEDMAN RUBIN & WHITE
Counsel for Plaintiffs

DATED:_____    By: /s/  Donna J. McCready

1126 Highland Avenue
Bremerton, Washington 98337
Telephone: (360) 782-4300
Facsimile: (360) 782-4358
E-mail: dmccready@frwlaw.us
Alaska Bar No. 9101003

PLAINTIFF'S BRIEF REGARDING COMPENSATION
*Allen v. USA,* Case No. 3:04-CV-0131-JKS
Page 14 of 15

**FRIEDMAN, RUBIN & WHITE**
1126 Highland Avenue
Bremerton, Washington 98337
Phone: (360) 782-4300
Facsimile: (360) 782-4358

1

**CERTIFICATE OF SERVICE**

2

3 I certify that on the 14 September 2007, a copy of the Plaintiff's Brief Regarding Compensation was served electronically on:

4 Gary M. Guarino
Assistant U.S. Attorney
Office of the U. S. Attorney
5 222 W. 7th Ave., #9
Anchorage, AK  99513-7567

6

/s/   Donna J. McCready
7 W:\Allen v. USA\PLED\Damages Brief (070914).doc

8

9

10

11

12

13

14

15

16

17

18

19

20

PLAINTIFF'S BRIEF REGARDING COMPENSATION
*Allen v. USA,* Case No. 3:04-CV-0131-JKS
Page 15 of 15

**FRIEDMAN, RUBIN & WHITE**
1126 Highland Avenue
Bremerton, Washington  98337
Phone:  (360) 782-4300
Facsimile:  (360) 782-4358