NELSON P. COHEN
United States Attorney

GARY M. GUARINO
Assistant U.S. Attorney
222 West Seventh Avenue, #9
Anchorage, Alaska  99513-7567
Phone: (907) 271-5071
Fax: (907) 271-2344
E-mail: gary.guarino@usdoj.gov

Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| KIMBERLY ALLEN, Personal Representative of the Estate of TODD ALLEN, Individually, on Behalf of the Estate of TODD ALLEN, and On Behalf of the Minor Child, PRESLEY GRACE ALLEN<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. 3:04-cv-0131-JKS<br><br>UNITED STATES' MOTION FOR MISCELLANEOUS RELIEF |

Pursuant to the Court's Order [Docket 119] the Defendant submits the

following memorandum and written arguments regarding Plaintiff's claims for noneconomic damages[1] including: the claim for Mr. Allen's pre-death pain and suffering, the claim for loss of consortium due to Mr. Allen's death, and the claim for negligent infliction of emotional distress.

1. The Claim For Mr. Allen's Pre-Death Pain And Suffering

Damages for pre-death pain and suffering may be awarded only where there is evidence that the decedent "consciously experienced" pain and suffering prior to his loss of consciousness or death.  Northern Lights Motel, Inc. v. Sweaney, 561 P.2d 1176, 1190 (Alaska 1977),   22 Am. Jur. 2d *Damages* § 209.  No award can be made for pain and suffering that is "substantially contemporaneous" with the decedent's death and events subsequent to the decedent's loss of consciousness are not compensable.  Sweaney, 561 P.2d at 1190-91, citing Burrous v. Knotts, 482 S.W. 2d 358, 363 (Tex. Civ. App. 1972).  Thus, Plaintiff's claim must be based, if at all, on the short time period between Mr. Allen's discharge from the Alaska Native Medical Center (ANMC) Urgent Care Clinic (UCC) and his loss of consciousness and fatal coma later that afternoon.

There was no evidence that Mr. Allen "consciously experienced" any

---

[1] Prior to trial the parties stipulated to the value of Plaintiff's economic losses. [Docket 86]

awareness, understanding, or mental anguish regarding his condition or his impending death during the morning or afternoon after he left the ANMC/UCC. There was no evidence that Mr. Allen recognized or that he experienced any fear that he had a potentially life-threatening condition (cerebral aneurysm) after he left ANMC. Mrs. Allen testified that the Allens accepted the "chronic pain" diagnosis of ANP Donna Fearey, they left the ANMC/UCC and had breakfast, and Mr. Allen said he felt better. The Allens then went shopping at Costco and they went back to the hotel, where Mr. Allen went to sleep at approximately 12 noon to 1:00 p.m. Aside from his fatigue (which Mrs. Allen attributed to his lack of sleep and the nausea medication), Mr. Allen did not voice any pain complaints or exhibit any signs of suffering, emotional distress, or fear of serious injury or impending death.

The evidence was that after the Allens returned to their hotel, Mr. Allen laid down for a nap, he became unconscious, unresponsive, and comatose, and he never regained consciousness prior to his death. Mrs. Allen was in the hotel room for a substantial part of the afternoon. There was no testimony that Mr. Allen ever woke up or moved or that he ever moaned or grimaced or gave any indication that he was in any pain (much less any conscious experience of pain and suffering).

Thus, there was a lack of evidence that Mr. Allen consciously experienced pain and suffering or fear of impending death to support a claim for pre-death pain

and suffering. Sweaney, 561 P.2d at 1190-91. Any claim for pre-death pain and suffering would be limited to the brief time and events from 8:15 a.m. (when the Allens left ANMC) until 12 noon to 1:00 p.m. (when Mr. Allen went to sleep and lost consciousness). Id. Further, any pain or suffering that Allen might have experienced "substantially contemporaneous" with his loss of consciousness and fatal coma that afternoon are not compensable.

2.  Plaintiff's Noneconomic Damages Claims Are Subject To One Aggregate Cap For Noneconomic Damages Under AS 09.17.010

Plaintiff's claims for noneconomic damages are subject to and limited by AS 09.17.010(b), which provides that the damages awarded by the Court "for all claims, including a loss of consortium claim, arising out of a single injury or death, may not exceed $400,000 or the injured person's life expectancy in years multiplied by $8,000, whichever is greater." This statute has been interpreted and applied as an "aggregate cap" on all claims as opposed an "individual cap" that would apply separately to individual claims or claimants. Smith, et. al v. The Cessna Aircraft Company, Case No. A00-333 CV (JWS) (Order On Motion to Establish a Rule of Law); Brown v. L.D.G., Inc., et. al, Case No. 3KN-00-513 CI.[2]

In Smith, the district court (U.S. District Judge John Sedwick) ruled that the

---

[2] Copies of the Court Orders attached as Exhibits 7 and 8.

claim for noneconomic damages for the decedent's pre-death pain and suffering and the surviving family members' claims for loss of consortium were all limited by the "aggregate cap" of $400,000 imposed by AS 09.17.010(b). After reviewing the wording of the statute and the legislative history for this "tort reform" measure, the district court concluded that "analysis convincingly shows that the cap in the law as it was eventually enacted was meant to be an aggregate cap." Thus, all of the claims for noneconomic losses were subject to the aggregate limit of $400,000. Exhibit 7, Order at pp. 4-5.

In Brown, the Alaska Superior Court ruled that the Alaska Legislature intended to impose a "per occurrence cap rather than a per claimant cap" when it enacted the limits on noneconomic damages in AS 09.17.010. Exhibit 8, Order at p. 20. Thus, one aggregate cap was applied to the surviving sons' claims for loss of consortium due to the decedent's wrongful death. Id.

The legislative history for AS 09.17.010 (1997) supports the conclusion that the legislature intended the cap on noneconomic damages to apply in the aggregate to the claims of all plaintiffs on a "per-occurrence basis" rather than to apply separately to each claim for each plaintiff. The "Sectional Summar[ies]" for April 15, 1997 and April 16, 1997, considered by the Senate Rules Committee in the drafting of the 1997 Act, each state that the noneconomic damages cap limits all

claims and is to be applied "per occurrence, and not per claimant."[3]

Another sectional analysis, comparing the Senate Finance Committee version of the bill (HB 58) and the Senate Rules Committee version, similarly stated that the caps in both versions were to be applied on a "per occurrence" basis.[4]  Further, at one point the legislature considered a proposed amendment that would have added the language "of a person" after the term "all claims" in order to make the cap  a "per plaintiff" rather than a "per occurrence" cap.[5]  This amendment ultimately was rejected by the legislature and AS 09.17.010(b) was enacted with the "all claims,"  per occurrence language.

In her trial brief, Plaintiff argued that the Alaska legislature intended to provide multiple caps for "personal injury" claims or for "wrongful death" claims, citing Sander v. Geib, Elston, Frost Professional Ass'n, 506 N.W.2d 107, 127 (S.D. 1993); and In re Estate of Maldonado, 117 P.3d 720, 725 (Alaska 2005).[6]

First, it is significant (but not surprising) that Plaintiff cites no relevant Alaska legislative history to support her claim.  The reason for this is simple, there

---

[3] Exhibit 1 p. 3, Exhibit 2 p. 3; Senate Rules Committee, Exhibit 3 p.4.

[4]  Exhibit 5 p. 2, "Section 9. Noneconomic Damages."

[5]  Exhibit 4, p.5, House Finance Committee Minutes, Amendment offered by Representative J. Davies.

[6]  Docket 79 pp. 17-19.

is no such history.  Reasonable people may differ on the wisdom or the need for the 1997 tort reform legislation.  However, there can be no reasonable argument that the Alaska legislature intended the 1997 amendments to AS 09.17.010 to somehow "expand" the availability of noneconomic damages claims.  The central purposes of the 1997 legislation were to limit and reduce noneconomic damages awards and to increase the predictability of awards for pain and suffering in order to increase the efficiency of civil litigation and to control the cost of liability insurance.[7]  Placing "per occurrence" caps on noneconomic damages would limit awards and would enable liability insurers and their insured to better predict and insure for potential tort damages claims.   Allowing "per claimant" caps would lead to more unpredictable damages awards that would vary widely, depending on how many claims or beneficiaries were involved in the litigation.

    Second, the law of South Dakota is not relevant or applicable to this case.  The South Dakota statute, SDCL § 21-3-11[8], cited in the <u>Sander</u> case, is not remotely comparable to the provisions of  AS 09.17.010.  Whatever legislative

---

[7] <u>Evans ex rel. Kutch v State</u>, 56 P.3d 1046, 1053 (Alaska 2002), citing Ch. 26, §§ 1(1)-1(5), SLA 1997.

[8] Copy attached as Exhibit 6.

Allen v. USA
Case No. 3:04-cv-0131-JKS      7

intent the South Dakota legislature may have had,⁹ the intent of the Alaska legislature is clear. It intended the caps to apply to all claims, including claims for pain and suffering and loss of consortium, on a "per occurrence" basis.

Third, In re Estate of Maldonado, was a probate action that interpreted and applied various provisions of estate law, including Alaska's Elective Share Law for surviving spouses. Maldonado, 117 P.3d at 722-26. The supreme court did not cite or discuss AS 09.17.010 or any tort reform statutes. There were no issues regarding the interpretation or application of the caps on noneconomic damages. Given the clear "per occurrence" language and legislative history for the 1997 revisions to AS 09.17.010, Plaintiff's reliance on an unrelated probate law ruling is neither controlling or persuasive.

Thus, the language of the statute, the legislative history, and the decisions of the federal district court and the Alaska Superior Court,¹⁰ establish that Plaintiff's noneconomic damages claims are subject to one aggregate cap for noneconomic damages under AS 09.17.010.

---

⁹ The Sander court interpreted the language of its statute but did not cite any specific supporting legislative history. Sander, 506 N.W.3d at 127.

¹⁰ Exhibits 7 and 8.

Allen v. USA
Case No. 3:04-cv-0131-JKS            8

3.  The Court Should Reject Plaintiff's Claim For Negligent Infliction Of Emotional Distress

At the pre-trial conference and in its Order for the briefing on the damages claims [Docket 119], the Court noted the cases from other jurisdictions that have rejected or limited the availability of NIED "bystander" claims in the context of medical malpractice lawsuits.

Texas has adopted a complete bar to bystander recovery in medical malpractice cases. Edinburg Hospital Authority v. Trevino, 941 S.W.2d 76, 81 (Tex. 1997), citing Maloney v. Conroy, 545 A.2d 1059, 1064 (Conn. 1988). Although Texas courts followed a liberal approach to the oft-cited Dillon factors,[11] the Texas Supreme Court ruled that the better-reasoned approach is not to permit bystander recovery in medical malpractice cases. Trevino, 941 S.W.2d at 81. The very nature of medical treatment is often traumatic to the layperson and there may be significant emotional distress from observing beneficial medical treatment as well as from negligent care. Both the bystander and the courts may be hard pressed to distinguish between the two sources of emotional distress. The Maloney court refused to recognize any bystander cause of action because medical care is inherently traumatic and doctors and hospitals might substantially curtail

---

[11] Dillon v. Legg, 441 P.2d 912 (Cal, 1968)

family visitation in order to limit such lawsuits.  <u>Maloney</u>, 545 A.2d at 1064.

In <u>Huggins v. Longs Drug Stores</u>, 862 P.2d 148, 154 (Cal. 1993) the California Supreme Court refused to allow NIED recovery by parents who had administered five times the prescribe dosage of a medication to their infant son because of a pharmacy error.  The parents' bystander claim was rejected because they lacked a "contemporaneous awareness that the victim was being injured by the negligent conduct." <u>Id.</u> at 151 n.3.  In refusing to extend NIED liability, the court cited the resultant increase in malpractice insurance rates and the concern that the self-protective measures that care providers would institute in response could interfere with "the provision of optimal care to the patient." <u>Id.</u> at 154.

The New Jersey Supreme Court in <u>Gendek</u> applied a similar restriction on NIED claims by patients' relatives.

> Although the law recognizes that at times the severe emotional trauma accompanying the tortuous death or injury of a family member may be compensable, such a claim is narrowly circumscribed in the context of a medical misdiagnosis or failure to act. In the context of health care, life and physical well-being are often at stake and frequently at risk, and injury and death are not unforeseeable. In considering the standards that govern an appropriate duty of care and limitations of liability in that setting, we must be especially mindful of the principles of sound public policy that are informed by perceptions of fairness and balance. We therefore insist that an immediate, close and clear involvement or connection be present between a person suffering emotional distress and the conduct of the professional healthcare providers whose fault has contributed to the grave or fatal injuries of a related loved one.

Gendek, 654 A.2d at 975-976.

The Alaska Supreme Court has recognized the possibility of expanding the narrow exceptions to the physical-injury rule for NIED claims, but has indicated that additional exceptions "will not be easily established." Kallstrom v. United States, 43 P.3d 162, 166-67 (Alaska 2002). The supreme court has not directly addressed the question of whether bystander NIED claims should be allowed in the medical malpractice context. See M.A v. United States., 951 P.2d 851, 856-57 (Alaska 1998) (claim did not satisfy the bystander test and the court didn't consider whether policy considerations should limit such claims); Chizmar v. Mackie, 896 P.2d 196, 204 (plaintiff was a direct victim and the holding did not affect the rules for bystander recovery). When approaching a new issue in NIED law, the Alaska Supreme Court has looked to the law in other jurisdictions.

In this case, Plaintiff's claim for NIED would be rejected outright by some states and it would not meet the restrictive standards imposed by the courts in New Jersey and California. As the Court has noted, Mrs. Allen was present when the "accident" (negligent diagnosis) occurred, however, she was not aware that the medical diagnosis and treatment were negligent or that there was any harm to Mr.

Allen.[12] Mrs. Allen's claim and emotional distress are based, in significant part, on her observations of the non-negligent, potentially beneficial medical care provided by the fire department EMTs, hours after the "accident." Recognizing an NIED claim in this context would open the door to NIED claims by other family members based on their observation of non-negligent (but often traumatic) medical treatment at the scene of the accident or hours later at the hospital. This risk was recognized and rejected on policy grounds by the courts in Texas, California, and New Jersey.

Further, when a claim for NIED is included in a wrongful death action, the claim for NIED is limited to the emotional distress from having witnessed the "accident" or the immediate consequences of the accident. Any emotional distress resulting from the death of Mr. Allen would not be part of the NIED claim. Tommy's Elbow Room, Inc. v. Kavorkian, 727 P.2d 1038, 1047 n. 13 (Alaska 1986). This is particularly significant where the death occurred shortly after the events alleged in the NIED claim. Mrs. Allen learned of her husband's fatal prognosis later that same evening at Providence Hospital. The emotional distress that she experienced from observing the EMTs' attempted resuscitation of Mr.

---

[12] Compare Ochoa v. Superior Court, 703 P.2d 1 (Cal. 1985) (parents observed child and were contemporaneously aware of alleged negligent treatment).

Allen was soon overtaken and subsumed by the emotional distress and grief resulting from her awareness of Mr. Allen's impending death.  Mrs. Allen testified at trial about the emotional distress she has experienced over the years due to the loss of her husband and its effect on her family life.  However, there was no testimony by Mrs. Allen or any medical provider that separately identified or segregated any long-term or ongoing emotional distress attributable to Mrs. Allen's observation of Mr. Allen's emergency care at the hotel.

Thus, even if the Court were to recognize Mrs. Allen's claim for NIED in a medical malpractice setting, the claim would be limited to the emotional distress that she experienced in the approximately 60 minutes while Mr. Allen was being resuscitated at the motel and would not include the emotional distress she experienced from her awareness of  Mr. Allen's impending death.

//    //

//    //

//    //

//    //

//    //

//    //

//    //

RESPECTFULLY SUBMITTED on September 17, 2007, in Anchorage, Alaska.

NELSON P. COHEN
United States Attorney

s/ Gary M. Guarino
Assistant U.S. Attorney
222 West 7th Ave., #9, Rm. 253
Anchorage, AK 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-2344
E-mail: gary.guarino@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on September 17, 2007,
a copy of the foregoing **UNITED STATES'
MOTION FOR MISCELLANEOUS RELIEF**
was served electronically on Donna McCready.

s/ Gary M. Guarino