# House FINANCE Minutes



HOUSE FINANCE COMMITTEE
March 14, 1997
1:45 P.M.

TAPE HFC 97-60, Side 1, #000 - end.
HOUSE BILL NO. 58

"An Act relating to civil actions; amending Rules 49 and 68, Alaska Rules of Civil Procedure; amending Rule 702, Alaska Rules of Evidence; and providing for an effective date."

PAUL DILLON, ATTORNEY, JUNEAU testified against HB 58. He began his presentation with a hypothetical case involving a

1

family of three. The father works for ARCO, the mother is a homemaker, and they have a small child. He theorized that the mother, "Becky", was seriously injured by a commercial vehicle while stopped at a red light. Becky's injuries are serious, resulting in the loss of limbs, back pain and hip injuries, and the inability to have more children. He observed that her past medical costs are $200 thousand dollars; future medical expenses are estimated at $700 thousand dollars; and the commercial vehicle is clearly at fault.

Mr. Dillon continue discussion of "Becky's" hypothetical case. He noted that under HB 58 the jury would be instructed that there is a $300 thousand dollar cap on non-economic damages. He theorized that the jury awarded Becky a $1 million dollar judgement. He maintained that under HB 58 there could be an immediate reduction of 50 percent of the judgement because the commercial driver, at the trial, blamed the repair shop for faulty breaks. Due to this testimony, the jury determined that there is a 50 percent award of fault to the break repair shop. He pointed out that the owner of the brake repair shop is not present at trial. The award is further reduced by future medical costs, since the father's insurance covers future medical benefits.

Mr. Dillon observed that in "Becky's" hypothetical case the remaining determination of $300 thousand dollars would be further reduced by the tax percentage that would have been assessed against future wages. He indicated that interpretation of this provision is unclear. He questioned if the taxes would be assessed on the original $1 million dollar judgment, or if only non-economic damages would be taxed. He observed that neither the state or federal government have taxed non-economic damages. If the full judgement was taxed by 28 percent Becky would be left with $140 thousand dollars. He observed that Becky would not have enough money to pay her lawyers, court costs or medical experts. He observed that lawyer fees could be greater than $100 thousand dollars and medical experts could cost "tens of thousands of dollars". In addition, the judgement could

Exhibit 4
Page 1 of 6

00439

be paid in periodic payments.

Mr. Dillon maintained that the legislation affects Alaskans' right to a jury trial and the right of a jury to make a determination on awards. Current statute does not allow someone to try the "phantom chair". He pointed out that if a phantom defendant is brought into the trial there is no one to contest allegations of fault.

Mr. Dillon urged members to not include section 11. Section 11 requires that "the amount of damages awarded shall be

2

reduced by the amount of federal and state income tax that would have been paid..."

BOB ENGELBRECHT, ALASKA VISITOR'S ASSOCIATION spoke in support of the legislation. He asked that recreational liability be added to the bill. He observed that HB 300 was merged with the tort reform bill during the last legislation session. The provisions of HB 300 were not included in HB 58. He observed that they would like to see an amendment to establish the responsibilities of people who operate commercial recreational activities and the responsibilities of people who participate in those activities.

Representative Martin MOVED to adopt Amendment 1 (copy on file). Representative J. Davies OBJECTED. Representative Porter explained that the amendment clarifies language regarding delivery, or sale of electricity. He noted that an electrical service is a service not a product, including the entry into a consumer's home and its application in the home. He observed that there was concern that the language would be interpreted to mean that delivery or production to a neighborhood transfer would be a service and that from the transformer to the home would be considered a product.

There being NO OBJECTION, Amendment 1 was adopted.

Representative Martin MOVED to adopt Amendment 2 (copy on file). Representative J. Davies OBJECTED. Representative Porter explained that the amendment does not change the legislation's intent. The amendment could clarify that the statute of repose is eight years. (The statute of limitation is two years. Amendment 2 clarifies that the statute of limitations does not apply to minors from birth to sixs-of-age.) Within the statute of repose there would be an exception as it applies to children from birth to six years old. This would cover concerns regarding birth injuries. A six year old would have two more years to introduce an action.

Amendment 2 also clarifies that a school district may extend the statute of repose on new school construction when agreed to by contract.

In addition, Amendment 2 clarifies that one case adds "another person's rights." This is consistent with current case law.

Co-Chair Therriault observed that the mere consumption of alcohol does not imply that a person's acts were not conscious. Representative Porter observed that consumption

Exhibit 4
Page 2 of 6

00440

of alcohol can mitigate a sentence but not be used as a defense.

3

Representative Porter noted that the Alaska Court System has requested that section 65, the effective date clause, be deleted.
Co-Chair Therriault MOVED to AMEND Amendment 2, delete "section 65" and reflect the change in the title. There being NO OBJECTION, it was so ordered.

There being NO OBJECTION, Amendment 2 as amended was adopted.

In response to a question by Representative J. Davies, Representative Porter explained that Amendment 2 clarifies that the statute of limitation is extended to eight years for children under six. Co-Chair Therriault summarized that the statute of repose will supercede the statute of limitations in regards to the exception for children under six.

Representative Porter responded to comments by Mr. Dillon. He stated that homemaker duties can be quantified in dollars and fall under economic damages, which is not capped. He stressed that the defense of faulty brakes would have come out during discovery.

Representative J. Davies questioned why the defendant is not required to bring the other party at fault into the trial. Representative Porter responded that "people who are responsible, should only be responsible to the extent of their own responsibility."

In response to a question by Representative Grussendorf, Representative Porter discussed section 11, reduction of taxes. He emphasized that victims should not be paid for wages that they would not have received. He noted that the judgment is not taxed by the federal government. He stressed that the same wages would have been taxed. The provision does not apply to judgments that are taxed.

Representative J. Davies asked why it is not left to juries to decide the impact of taxes. Representative Porter maintained that it would be unusual for a jury to make a deduction of taxes when the IRS would tax the judgement. Representative Kelly suggested that juries would assume some level of taxation and add to the judgement.

Representative Porter clarified that collateral benefit provisions exist in current statute. He explained that, under current statutes, the Court deducts collateral benefits from the judgement. Under the legislation, the jury would make the deduction.

4

In response to a question by Co-Chair Therriault, Representative Porter could not estimate the economic value of a homemaker.

Exhibit 4
Page 3 of 6

00441

Representative G. Davis MOVED to adopt Amendment 3 (copy on file). Co-Chair Therriault OBJECTED for purposes of discussion. Representative J. Davies noted that the amendment would change the statue of repose from 8 to 10 years. He stated that at ten years 98 percent of claims would be discovered within the allowed period. Representative Porter noted that Representative J. Davies was referring to construction claims. Representative Porter responded that 96.8 percent of all claims would be discovered within 8 years. He stressed that a ten year statute of repose would mandate two additional years of insurance coverage. He observed that the change would also affect the provision for children. He emphasized the difficulty to defend against cases involving time-lapse. He observed that the Alaska Supreme Court ruled:

> "A five-year statue of limitations governs the filing of attorney grievances. Alaska Bar R. 18. This reflects a judgment that five years is the outer limit of time in which responding attorneys are able to fairly defend themselves against charges, given the loss of memory, evidence, and witnesses that occurs over time."

Representative J. Davies argued that, in the case of a construction project, there are circumstances where the problem would not be discovered for more than many years. He pointed out that a statute of repose accrues based on a fixed period of time. A statute of limitation accrues from the time one would reasonably know about the problem. He spoke in support of a ten year statute of repose. He stressed that there would not be a huge additional expense to keep documents another two years in order to catch the majority of cases. He observed that Representative Porter's concerns are attached to non-construction issues. He suggested that there could be two different statutes of repose.

A roll call vote was taken on the MOTION to adopt Amendment 3.

IN FAVOR: J. Davies, Grussendorf, Moses
OPPOSED: G. Davis, Foster, Kelly, Kohring, Martin, Therriault,

Representatives Mulder and Hanley were absent from the vote.

The MOTION FAILED (3-6).

5

Representative J. Davies WITHDREW Amendments 4 and 5. Representative J. Davies MOVED to adopt Amendment 6 (copy on file). Representative Kelly OBJECTED. Representative J. Davies explained that Amendment 6 would allow the caps on non-economic damages to be tied to the Consumer Price Index (CPI). Representative Porter spoke against Amendment 6. He stressed that the Court would be required to make constant CPI adjustments. He pointed out that statutes can be revised.

Representative J. Davies responded that CPI calculations are simple and can be calculated quickly. He stressed the impact of inflation. He emphasized the difficulty of

Exhibit 4
Page 4 of 6

passing legislation to revise statutes.

Representative Porter observed that the legislation contains an accelerator. He stressed that the value of the CPI is in national dispute.

A roll call vote was taken on the MOTION to adopt Amendment 6.

IN FAVOR: J. Davies, Grussendorf, Moses
OPPOSED: G. Davis, Foster, Kelly, Kohring, Martin, Therriault,

Representatives Mulder and Hanley were absent from the vote.

The MOTION FAILED (3-6).

Representative J. Davies MOVED to adopt Amendment 7 (copy on file). Co-Chair Therriault OBJECTED. In response to a question by Representative Porter explained that each claim is limited by $300 thousand dollars. The amendment would reduce the amount of money that children could get over loss of consortium. Representative J. Davies indicated that the amendment was not correctly drafted.

Representative J. Davies expressed concern that subsection (b) on page 5 could be interpreted that the cap applies in aggravate. He suggested adding "of a person" on page 5 line 16.

Representative J. Davies WITHDREW Amendment 7. He MOVED to insert after "claims", "of a person" on page 5 line 16. There being NO OBJECTION, it was so ordered.

Representative J. Davies WITHDREW Amendment 8 (copy on file). He MOVED to adopt Amendment 9 (copy on file). Co-Chair Therriault OBJECTED for purposes of discussion.

6

Representative J. Davies noted that Amendment 9 addresses the limit on punitive damages. The amendment would delete "four times the amount of compensatory damages awarded or $600 thousand dollars, whichever is greater"; and add "three times the annual net profit reasonably attributable to the commercial activity." He spoke in support of the amendment. He noted that the amendment would address the situation where a large corporation makes a business decision that they are willing to risk the cost of injuries or death against the cost of instituting a change to the product. He referred to the Exxon Valdez case. He maintained that $600 thousand dollars is not "a hammer big enough to get the attention of a large corporation." He stated that the cap should be appropriate to the size of the corporation.

Representative Kelly pointed out that the in the Exxon case they would have been required to pay four times the compensatory damages since the legislation requires that the greater amount be paid.

Representative Porter noted that the Exxon Valdez case would not be tried under state law. He stated that, if it were decided under HB 58, that Exxon would have been required to

Exhibit  4
Page  5  of  6

00443

pay $3.5 billion dollars in punitive damages at three times the compensatory damages. He questioned which corporation would be held responsible under Representative J. Davies' amendment, the Alaskan corporation or the parent corporation. He pointed out that there are several definitions of "net profit".

Representative Foster suggested that the amendment would be detrimental to small businesses. He cited a hypothetical case in which a company has contaminated soil. The company has insurance, but only made a small profit. The amount of damages that would be recoverable would be minimal. Representative J. Davies argued that $600 thousand dollars would be too much for a small company. He reiterated that the award needs to relate to the economic ability of the company.

A roll call vote was taken on the MOTION to adopt Amendment 9.

IN FAVOR: J. Davies, Grussendorf
OPPOSED: G. Davis, Foster, Kelly, Kohring, Martin, Therriault

Representatives Hanley, Mulder and Moses were absent for the vote.

The MOTION FAILED (2-6).

7

Representative J. Davies MOVED to adopt Amendment 10 (copy on file). Co-Chair Therriault OBJECTED for purposes of discussion. Representative J. Davies explained that Amendment 10 would delete section 11, reduction of taxes. He argued that the judge and jury should determine the affect of taxes on the award. He expressed concern with the victims' rights.

Representative Porter argued against the amendment. He reiterate the intent of the provision is to make someone responsible for what a person lost, not make a profit.

Representative Grussendorf spoke in support of the amendment.
Mr. Dillon discussed section 11. He noted that the federal government is the taxing authority. He observed that juries are told to take into account taxes for past wages. Juries are not told to take into account taxes for future economic wages. He did not know of other states that makes a deduction for taxes. He stressed that the IRS will take its share of the award.

In response to a question by Representative G. Davis, Mr. Dillon maintained that the argument should not be allowed that some form of damages should not be paid on the bases of the federal government taxing or not taxing. He asserted that litigation will result from the provision.

MICHAEL LESSMEIER, ATTORNEY, STATE FARM INSURANCE spoke against the amendment. He observed that economists make projections of past wage lost. Past wage lost is reduced by the amount that one would have to pay for federal income

Exhibit 4
Page 6 of 6

00444