IN THE SUPERIOR COURT FOR THE STATE OF ALASKA
THIRD JUDICIAL DISTRICT AT ANCHORAGE

ROBERT J. BROWN, Personal Representative )
of Tracy N. Eason, Deceased, )
                         Plaintiff, )
                         )
      v. )
                         )
L.D.G., INC., an Alaska Corporation, and )
LARRY GJOVIG, )
                  Defendants. )

**RECEIVED**
JUL 2 6 2006
BISS & HOLMES
ATTORNEYS AT LAW

Case No. 3KN-00-513 CI

## Order on Pending Motions

      The court has reviewed Plaintiff's Supplemental Brief on Constitutional

Issues Related to Non-Economic Damages Cap, filed June 8, 2005, and Defendant's

Supplemental Brief on Constitutionality of AS 09.17.010, filed July 1, 2005. Oral

argument was held on September 22, 2005. The court has also reviewed the State's

Briefing on the Constitutionality of the Non-Economic Damages Cap filed March

24, 2006, the Amicus Brief of Alaskans for Access to Healthcare filed March 24,

2006, and the Amicus Brief of Defense Counsel of Alaska, filed March 28, 2006.

      The court has also reviewed Plaintiff's Request for Entry of Judgment filed

February 2, 2006, Plaintiff's Motion to Strike Amicus Brief filed March 24, 2006,

and Plaintiff's Motion for Entry of Judgment filed May 23, 2006, and the opposition

and replies thereto.

### Background

      On March 12, 2004, the jury awarded each of Tracy Eason's two sons

$565,798 in non-economic damages for Tracy Eason's wrongful death. The cap in

AS 09.17.010(b) requires the court to enter one award for both sons for non-

Exhibit   8
page   1   of  21  pages

economic damages in the amount of $421,824.[1]  Plaintiff challenges the cap in AS

09.17.010(b) as (1) facially unconstitutional under the right to trial by jury and

equal protection and (2) unconstitutional as applied based upon equal protection

grounds.

<u>Discussion</u>

AS 09.17.010 provides:

(a) In an action to recover damages for personal injury or wrongful death, all damage claims for non-economic losses shall be limited to compensation for pain, suffering, inconvenience, physical impairment, disfigurement, loss of enjoyment of life, loss of consortium, and other nonpecuniary damage.

(b) Except as provided under (c) of this section, the damages awarded by a court or a jury under (a) of this section for all claims, including a loss of consortium claim, arising out of a single injury or death may not exceed $400,000 or the injured person's life expectancy in years multiplied by $8,000, whichever is greater.

(c) In an action for personal injury, the damages awarded by a court or jury that are described under (b) of this section may not exceed $1,000,000 or the person's life expectancy in years multiplied by $25,000, whichever is greater, when the damages are awarded for severe permanent physical impairment or severe disfigurement.

(d) Multiple injuries sustained by one person as a result of a single incident shall be treated as a single injury for purposes of this section.

Statutes are presumed constitutional and the burden is on the party

challenging the constitutionality of a statute to demonstrate unconstitutionality.

<u>Treacy v. Municipality of Anchorage</u>, 91 P.3d 252, 260 (Alaska 2004); <u>A. Fred

Miller, Attorneys at Law, P.C. v. Purvis</u>, 921 P.2d 610, 618 (Alaska 1996).  Courts

are to construe statutes to avoid a finding of unconstitutionality if possible.  <u>State,

Dep't of Revenue v. Andrade</u>, 23 P.3d 58, 71 (Alaska 2001).

---

[1] At the date of Tracy Eason's death, her life expectancy was 52.728 years.  The multiplication of that number by $8,000 is $421,824.

Exhibit ___8___
page ___2___ of _21_ pages

A statute "is facially unconstitutional if no set of circumstances exists under which the [statute] would be valid." State, Dep't of Revenue, Child Support Enforcement Div. v. Beans, 965 P.2d 725, 728 (Alaska 1998) (internal quotations omitted). See: Gilmore v. Alaska Workers' Compensation Board, 882 P.2d 922, 9289-30 n. 17 (Alaska 1994) where the Alaska Supreme Court explained that statutes may be unconstitutional as applied or facially unconstitutional. A statute is facially unconstitutional where it is incapable of being constitutionally applied or where it is overbroad and infringes on values protected by the First Amendment. Because the statute in Gilmore was capable of being applied constitutionally in some circumstances, it was not facially unconstitutional. Applied to the facts presented in Gilmore, however, the statute failed to withstand scrutiny and was held to be unconstitutional.

In Evans ex rel. Kutch v. State, 56 P.3d 1046 (Alaska 2002), the Alaska Supreme Court affirmed a superior court's ruling by a two-two vote that the damages cap in AS 9.17.010 was not facially unconstitutional as a violation of the right to a jury trial or as a violation of the equal protection clause. Evans was an action for declaratory relief, challenging only the facial constitutionally of the statute. The Supreme Court has not yet had occasion to opine on the constitutionality of the cap on non-economic damages as applied to particular facts arising from a case. Further, since only four justices participated in the Evans decision, it is not binding precedent on issues where the court was evenly-divided. Evans, 56 P.3d at 1070 n.1 (Bryner, J., dissenting in part); Reust v. Alaska Petroleum Contractors, Inc., 127 P.3d 807, 821 n.63 (Alaska 2005).

Exhibit ___8___
page ___3___ of ___21___ pages

## 1. Right to a Jury Trial: Facial Challenge

Plaintiff argues that the non-economic damages cap constitutes a violation of the right to trial by jury guaranteed by Article I, § 16 of the Alaska Constitution. Plaintiff's argument is that "depriving a litigant of that which a jury has determined him to be entitled in a civil action" violates the constitutional right to a jury trial. Supp. Br., p. 6. Plaintiff asserts that "[t]he jury's factual finding that a plaintiff is entitled to recover damages is meaningless unless the plaintiff recovers those damages." Supp. Br., p. 5-6.

Article I, § 16 of the Alaska Constitution, Civil Suits; Trial by Jury, provides:

> In civil cases where the amount in controversy exceeds two hundred fifty dollars, the right of trial by a jury of twelve is preserved to the same extent as it existed at common law. The legislature may make provision for a verdict by not less than three-fourths of the jury and, in courts not of record, may provide for a jury of not less than six or more than twelve.

In Evans, the dispositional opinion found that the damages cap does not violate the right to a jury trial, stating that "[t]he decision to place a cap on damages awarded is a policy choice and not a re-examination of the factual question of damages determined by the jury." 56 P.3d at 1051. The other two Justices found that the damages cap violates the right to a jury trial, stating:

> [T]he jury's function has traditionally included determining the amount of damages a plaintiff should actually receive; and since the demand for damages itself triggers the right to a jury trial under [Alaska's] constitutional provisions . . . regardless of whether the jury's decision is technically characterized as a finding of fact or conclusion of law, '[i]t would be illogical . . . to find that a jury, empaneled because monetary damages are sought, could not then fully determine the amount of damages suffered.'

Exhibit 8
page 4 of 21 pages

56 P.3d at 1071 (internal quotation omitted).  Courts from other states are split on whether a damages cap violates the right to a jury trial.  See id. at 1070 n.2 (collecting cases); Ferdon ex rel. Petrucelli v. Wisconsin Patients Comp. Fund, 701 N.W.2d 440, 448 n.12 (Wis. 2005) (collecting state cases).  See also Estate of Sisk v. Manzanares, 270 F. Supp. 2d 1265, 1278 n.45 (D. Kan. 2003) (collecting federal cases).

     Plaintiff asserts that it is "misplaced" to question whether a damages cap constitutes a re-examination of a factual question determined by a jury because Article I, § 16 of the Alaska Constitution, unlike the Seventh Amendment to the Constitution of the United States, does not contain a re-examination clause.  While there is no explicit re-examination clause in Article I, § 16, "[i]t is a common law principle that where there is a trial by jury, questions of fact must be decided by the jury and may not be re-examined by the court."  Taylor v. Interior Enterprises, Inc., 471 P.2d 405, 407 (Alaska 1970).  Additionally, Rule 38(a) of the Alaska Rules of Civil Procedure provides that "[t]he right of trial by jury as declared by section 16 of article I of the constitution, or as given by a statute of the state, shall be preserved to the parties inviolate."  See also Frank v. Golden Valley Elec. Ass'n, Inc., 748 P.2d 752, 754 (Alaska 1988) (noting that right to jury trial is to be "jealously guarded by the courts of this state," but "like other constitutional rights, [it] may be waived under appropriate circumstances.").

     The re-examination clause prohibits the court from making an independent finding of fact after the jury has decided the fact, but the language of the clause does not prohibit the legislature from enacting legislation that applies in all cases.  See Kodiak Island Borough v. Roe, 63 P.3d 1009, 1016-17 (Alaska 2003) ("[t]he

Exhibit  8
page  5  of  21

legislature may limit the amount of damages that can be awarded, but it is for the jury to determine the extent of the plaintiff's injury and the damage award that will make her whole."); <u>Davis v. Omitowoju</u>, 883 F.2d 1155, 1162 (3d Cir. 1989) (finding that reexamination clause of Seventh Amendment applies only to judges and that there was no reexamination of a fact decided by a jury where the trial court applied a statutory cap on non-economic damages because the court was "merely implementing a policy decision of the legislature").

A jury may award more than the amount set by the cap, but a jury may also award less than the amount set by the cap. Thus, the first reason for concluding that the damages cap is not facially unconstitutional is that there is a set of circumstances under which the statute is valid, such as where a jury awards less than the statutory cap. The second reason for concluding that the cap on non-economic damages does not invade the constitutionally-protected right to a jury trial is that the cap is a policy decision by the legislature; it does not require re-examination of factual questions decided by the jury. <u>Evans,</u> 56 P.3d at 150-51 (citing <u>David v. Omitowoju</u>, 883 F.2d 1155, 1159-65 (3d Cir. 1989); <u>Kodiak Island Borough v. Roe,</u> 63 P.3d 1009, 1016-17 (Alaska 2003). I am persuaded that AS 09.17.010 does not represent a facially unconstitutional cap on non-economic damages.

### 2. Equal Protection

Article I, § 1 of the Alaska Constitution, Inherent Rights, guarantees "that all persons are equal and entitled to equal rights, opportunities, and protection under the law." "A person or group asserting an equal protection violation must

Exhibit 8
page 6 of 21

demonstrate that the challenged law treats similarly situated persons differently." Alaska Civil Liberties Union v. State, 122 P.3d 781, 787 (Alaska 2005). The common question in equal protection cases is whether two groups of people who are similarly situated are treated differently. However, whether two groups are treated differently is the beginning of the court's equal protection analysis, not the end. Equal protection jurisprudence concerns itself largely with the reasons for treating one group differently from another. Gonzales v. Safeway, 882 P.2d 389, 396 (Alaska 1994). Separation by different legal treatment is referred to as classification, and the court reviews a classification under Alaska's equal protection clause by asking whether a legitimate reason exists for disparate treatment. If a legitimate reason is found, the court then examines whether the enactment creating the classification bears a fair and substantial relationship[2] to the reason. Id. (citing State, Dep't of Revenue v. Cosio, 858 P.2d 621, 629 (Alaska 1993)).

A three-step sliding-scale analysis has evolved in case law to evaluate equal protection challenges under the Alaska Constitution:

> First, it must be determined at the outset what weight should be afforded the constitutional interest impaired by the challenged enactment. The nature of this interest is the most important variable in fixing the appropriate level of review. . . . Depending upon the primacy of the interest involved, the state will have a greater or lesser burden in justifying its legislation. Second, an examination must be undertaken of the purposes served by a challenged statute. Depending on the level of review determined, the state may be required to show only that its objectives were legitimate, at the low end of the continuum, or, at the high end of the scale, that the legislation was motivated by a compelling state interest.
> Third, an evaluation of the state's interest in the particular means employed to further its goals must be undertaken. Once again, the state's burden will differ in accordance with the

---

[2] Exceptions arise, such as when the classification is based upon a suspect factor, such as race or religion. In that event, strict scrutiny is applied.

Exhibit  8
page  7  of  21  page

determination of the level of scrutiny under the first stage of analysis. At the low end of the sliding scale, we have held that a substantial relationship between means and ends is constitutionally adequate. At the higher end of the scale, the fit between means and ends must be much closer. If the purpose can be accomplished by a less restrictive alternative, the classification will be invalidated.

Alaska Civil Liberties Union, 122 P.3d at 789 (internal quotations omitted).


### a. Equal Protection: Facial Challenge

The court's first consideration is whether persons treated differently by the statute are "similarly situated." "Whether two entities are similarly situated is generally a question of fact," but "[i]f it is clear that two classes are not similarly situated, this conclusion 'necessarily implies that the different legal treatment of the two classes is justified by the differences between the two classes.'" Alaska Inter-Tribal Council v. State, 110 P.3d 947, 967 (Alaska 2005) (quoting Lauth v. State, 12 P.3d 181, 187 (Alaska 2000)).

Plaintiff asserts that the damage cap statute "creates two classes of plaintiffs, those with serious injuries who are not fully compensated for their damages, and those with lesser injuries who do receive full compensation." Supp. Br., p. 6. This is the argument that was raised in Evans (claim that "two classes of successful tort plaintiffs are treated differently: (1) those who receive 'full' compensation, and (2) those who do not, because 'full' compensation would be in excess of the caps."). 56 P.3d at 1052.

For purposes of assessing the facial challenge, the court assumes that those who are awarded non-economic damages in an amount below the statutory cap and above the statutory cap are similarly situated.

Exhibit 8

8 of 21

### b. Equal Protection: 'As Applied' Challenge

Plaintiff also asserts that, as applied to the facts of this case, the damage cap statute creates two classes of plaintiffs, those who are the sole beneficiary of an estate and are therefore entitled to receive the full amount set forth in the cap, and those who are one of many beneficiaries who have to split the amount set forth in the cap. Plaintiff contends that the statute has an impermissible application because Ms. Eason's two sons must share the total permissible amount allowed by the non-economic damages cap. If a child without siblings was similarly situated, he/she would be entitled to the full award of non-economic damages.

Defendants counter that there is no disparate treatment among beneficiaries, that the cap applies the same to all cases where there are two beneficiaries. The amicus brief filed by Alaskans for Access to Healthcare argues that the statute treats all estates equally. Alaskans for Access to Healthcare Br. p. 48. However, Defendant agrees that "a wrongful death action is really on behalf of the survivor beneficiaries" and that the personal representative is a nominal party. Supp. Br. p. 9. The statement that estates are treated differently ignores the practical impact of the damages cap on individual claimants. The court agrees with Plaintiff that the proper comparison is between plaintiffs who are the sole beneficiary and plaintiffs who are one of many beneficiaries. The statute does treat these classes of claimants differently. In fact, in instances such as the one presented here, the impact of the different treatment is dramatic.

### 1. Nature of Interest

The next step is the determination of what weight to give the interests affected by the statutory cap.

Exhibit    8
page    9    of    21    pages

In <u>Evans,</u> the dispositional opinion concluded that "restrictions on the types or amounts of damages that a plaintiff can pursue in court only infringe upon economic interests" and applied minimum scrutiny to the challenge to AS 09.17.010. 56 P.3d at 1053. The dissent concluded that the "classifications infringe an individual's important interest to be compensated fully for his injuries" that justified application of heightened scrutiny. <u>Id.</u> at 1073.

Other case law supports the conclusion that the application of the non-economic damages cap implicates an economic interest. In <u>Reid v. Williams,</u> the Alaska Supreme Court ruled on constitutional challenges to a statute that allowed the court to reduce a damage award after the fact finder had rendered an award. 964 P.2d 453, 455 n.1 (Alaska 1998). The court concluded that a "right to damages" is an economic interest. <u>Id.</u> at 458. <u>See also</u> <u>Gilmore v. Alaska Workers' Compensation Board,</u> 882 P.2d 922, 927 (Alaska 1994) (interest in workers' compensation benefits that reflect actual losses is an economic interest); <u>State v. Cosio,</u> 858 P.2d 621, 629 (Alaska 1993) (interest in receiving permanent fund dividend is an economic interest); <u>Sonneman v. Knight,</u> 790 P.2d 702, 705 (Alaska 1990) (interest in unemployment benefits is an economic interest). Plaintiff's interest in this matter is in recovering the non-economic damages awarded by the jury. The weight of case law authority indicates that this is an economic interest.

The Alaska Supreme Court has repeatedly held that economic interests are reviewed at the lower end of the sliding scale. <u>Gilmore v. Alaska Workers' Compensation Board,</u> 882 P.2d 922, 927 (Alaska 1994); <u>State v. Cosio,</u> 858 P.2d 621, 629 (Alaska 1993); <u>Sonnerman v. Knight,</u> 790 P.2d 702, 705 (Alaska 1990). Accordingly, the State need only show that the statute was designed to achieve a

Exhibit    8
____ 10 __ of __ 21 ____

legitimate governmental objective, and that the means bear a fair and substantial relationship to the accomplishment of that objective. Underwood v. State, 881 P.2d 322, 325 (Alaska 1994); Gonzales v. Safeway, 882 P.2d 389, 396 (Alaska 1994). See also Alaska Civil Liberties Union v. State, 122 P.3d 781, 790 (Alaska 2005) (interest in employment benefits receives minimum scrutiny); Church v. State, Dep't of Revenue, 973 P.2d 1125, 1130 (Alaska 1999) (interest in PFD receives minimum scrutiny); Reid v. Williams, 964 P.2d 453, 458 (Alaska 1998) (interest in damages for medical malpractice claim receives minimal scrutiny); Gilmore v. Alaska Workers' Compensation Board, 882 P.2d 922, 926-27 (Alaska 1994) (interest in workers' compensation benefits receives minimum scrutiny).

Minimum scrutiny requires that the challenged law bear a "fair and substantial relationship" to "attaining 'legitimate' government objectives." Reid, 964 P.2d at 458 (internal quotations omitted).

### 2. Purposes served by Challenged Statute

The next step is consideration of the purposes served by the challenged law. Under minimum scrutiny, the governmental interests advanced by the challenged law need only be legitimate. Alaska Civil Liberties Union, 122 P.3d at 790. "It is not a court's role to decide whether a particular statute or ordinance is a wise one; the choice between competing notions of public policy is to be made by elected representatives of the people." Concerned Citizens of South Kenai Peninsula v. Kenai Peninsula Borough, 527 P.2d 447, 452 (Alaska 1974). See also Griswold v. City of Homer, 925 P.2d 1015, 1019 (Alaska 1996) ("We have repeatedly held that it

Exhibit 8
page 11 of 21 pages

is the role of elected representatives rather than the courts to decide whether a particular statute or ordinance is a wise one.").[3]

AS 09.17.010 was enacted as part of the 1997 tort reform. Ch. 26, SLA 1997. The legislative intent is set out in chapter 26, section 1, SLA 1997, which states that the purpose of the tort reform package was to:

> (1) encourage the efficiency of the civil justice system by discouraging frivolous litigation and by decreasing the amount, cost, and complexity of litigation without diminishing the protection of innocent Alaskans' right to reasonable, but not excessive, compensation for tortious injuries caused by others;
> . . .
> (3) encourage individual savings and economic growth by fostering an environment likely to control the increase of liability insurance rates to individuals and businesses resulting in a savings to the state, municipalities, and private businesses that are self-insured;
> (4) encourage the traditionally recognized Alaska values of self-reliance and independence by underscoring the need for personal responsibility in making choices and personal accountability for the consequences of those choices;
> (5) alleviate the high cost of malpractice insurance premiums that discourage physicians, architects, engineers, attorneys, and other professionals from rendering needed services to the public.

In Gilmore v. Alaska Workers' Compensation Board, the Alaska Supreme Court examined the purpose of the challenged provision of the Workers' Compensation Act "in light of the purpose of the entire Act." 882 P.2d at 927. The purpose of the challenged law was "to ensure the quick, efficient, fair, and predictable delivery of indemnity and medical benefits to injured workers at a reasonable cost to the employers." Id. The court held that those are legitimate purposes. Id.

---

[3] See Alaskans for Access to Healthcare Br. pp. 1-3 (citing cases supporting the assertion that the trial court is not to reweigh the testimony and information considered by the legislature or to substitute its judgment for the legislature's policy decisions).

Exhibit  8
Page 12 of 21 pages

In <u>McConkey v. Hart</u>, the Alaska Supreme Court addressed an equal protection challenge to a statute that limited the accrual of prejudgment interest to the earlier of notice or service only in cases involving personal injury, death, and damage to property, while preserving the right to prejudgment interest from the time of injury in other tort cases, such as legal malpractice or defamation. 930 P.2d 402, 407 (Alaska 1996). The court held that "[r]educing health care costs and encouraging the provision of health care services" are legitimate goals. <u>Id</u>. at 408.

In <u>Reid v. Williams</u>, the Alaska Supreme Court reviewed one statute that was part of a "comprehensive measure adopted to control the rising costs of medical malpractice insurance and to furnish hospitals and individual health care providers with medical malpractice insurance." 964 P.2d at 459 n.14. The court considered the challenged statute "in light of the purposes of the entire act." <u>Id</u>. The court concluded that "to control medical malpractice insurance costs and increase the availability of health care" are legitimate goals. <u>Id</u>. at 459. The court also relied on its holding in <u>Keyes v. Humana Hosp. Alaska, Inc.</u>, 750 P.2d 343, 351 (Alaska 1988) where the court considered an equal protection challenge to a different section in the medical malpractice reform package. <u>Id</u>. at 458-59. In <u>Keyes</u>, the court concluded that "alleviating the effects of the malpractice insurance crisis, and reducing the cost and improving the availability of health care" are legitimate goals. <u>Id</u>. at 459.

The dispositional opinion in <u>Evans</u> relied on the legislature's factual findings and concluded that the legislative goals were legitimate. 56 P.3d at 1053-54. The court stated that "[a]fter examining various evidence and testimony, the legislature found that there were problems with tort litigation that needed to be solved,

Exhibit  8

13  of  21

including frivolous litigation, excessive damages awards, and increased costs for malpractice and other liability insurance." Id. at 1053 (citing ch. 26, § 1(1-5), SLA 1997).

The legislative goals behind AS 09.17.010 are similar to the goals held to be legitimate in Gilmore, McConkey, and Reid. I conclude that the legislature's stated goals in enacting AS 09.17.010 are legitimate.


### 3. Nexus between Legislative Objectives and Statute

The third step in the equal protection analysis is evaluating the "means chosen to advance the interests identified from the second step." Alaska Civil Liberties Union, 122 P.3d at 790. Under minimum scrutiny, there must be a "fair and substantial relation" between the means and the object of the legislation, but "[a] perfect fit between the legislative classification and the governmental objective is not required." Gilmore, 882 P.2d at 928.

The dispositional opinion decision in Evans concluded that the substantial relationship requirement was met. 56 P.3d at 1055. The court referred to testimony before the legislature regarding the tort reform package:

> Several insurance company representatives claimed that liability insurance rates would go down if a damages cap were to be enacted; one representative included statistics that tended to show that in California, where similar tort reforms have been enacted, insurance premiums have in fact gone down. Small business owners and representatives of health care organizations testified, respectively, that chapter 26, SLA 1997 would have a positive impact on liability insurance rates and malpractice insurance rates.

56 P.3d at 1054. The legislature was also presented with testimony "that damages caps would not have a clear effect on frivolous litigation or insurance rates." Id.

Exhibit 8
page 14 of 21 pages

The dispositional opinion concluded that the "record indicates that the legislature considered at least some evidence tending to show that damages caps, as well as the other provisions of chapter 26, SLA 1997, could have a positive effect on the legislature's objectives" and that the "legislature apparently weighed the competing evidence and decided that the evidence in favor of creating the damages caps justified enacting the caps." Id. at 1054-55.

The dissent in Evans concluded that there was no "substantial relation between the specific means chosen by the legislature and the legitimate ends it ostensibly sought to achieve." Id. at 1075. The dissent found that the "state offers nothing to justify the seemingly absolute disconnect between the legislature's stated tort reform goals – reducing insurance costs, discouraging frivolous claims, and preventing excessive verdicts – and the *particular* means it chose to attain those goals when it enacted the damages cap." Id.

The equally divided supreme court could not agree on whether the non-economic damages cap is unconstitutional on its face, and the analysis is even more difficult when the statute is applied to the facts of this case. I agree with the dispositional decision that the legislature can impose limits upon awards of non-economic damages. The tougher question is whether there is a permissible nexus between the means chosen here and the legislature's goals.

The equal protection challenge does not arise from the cap itself; if the legislature raised or lowered the cap, but applied it equally to all claimants, there would be no argument that similarly situated claimants are treated differently. The equal protection challenge to AS 9.17.010 arises from the legislature's decision to cap damages per occurrence rather than per claimant. The facts of this case

Exhibit ___8___

___15___ of ___21___

perfectly highlight the possibility for inequitable results that are inherent in the legislature's particular method for capping non-economic damages. As applied, AS 09.17.010's per occurrence cap requires that each of Ms. Eason's sons will receive an award of just over $210,000. They would be entitled to receive double that amount for non-economic damages if the cap had been applied on a per claimant basis.

Defendants tacitly argue that the "per occurrence" formula furthers the legislature's goals by providing greater predictability than a "per claimant" formula. As insurers or potential defendants assess their exposure in a "per occurrence" statutory scenario, they do not have to factor in the additional risk that a wrongful death victim might have multiple beneficiaries. Each estate is only entitled to recover the cap of the non-economic damages one time. As pointed out by amicus briefing, the legislature's goal of reducing insurance costs and litigation costs is furthered by narrowing the scope of debate about the value of a claim. The ability to value claims enhances the chances of settlement. Some difference of opinion will still exist regarding the amount of non-economic damages that might be awarded in a particular case because the measure of non-economic damages is inherently imprecise. But limiting the number of total claimants enhances the ability to predict outcomes by eliminating the added exposure associated with decedents who have multiple beneficiaries.

A cap on non-economic damages furthers at least some of the goals identified by the legislature when it adopted AS 09.17.010, but legislation must bear more than a rational relationship to the goals of a statute to withstand scrutiny in Alaska. Our case law requires that the means employed must bear a fair and substantial

Exhibit 8
page 16 of 21

relationship to the legislature's goals. Other case law gives some indication of how close the Alaska Supreme Court has required the nexus between the goal of a statute and the means selected for achieving the goal.

In Gilmore, the court concluded that the substantial relationship test was not met and that the formula for calculating workers' compensation benefits in the challenged statute was "an unconstitutional infringement on the equal protection clause of the Alaska Constitution." 882 P.2d at 928-29. The goals of that challenged statute were to "fairly approximat[e] a worker's probable future earning capacity and achiev[e] a 'quick, efficient, *fair*, and predictable delivery of indemnity and medical benefits.'" Id. at 928. The efficiency of the formula adopted by the legislature was found to have been gained "at the sacrifice of fairness in result." Id. The court concluded:

> The gross weekly wage determination method of AS 23.30.220(a) creates large differences in compensation between similarly situated injured workers, bears no relationship to the goal of accurately calculating an injured employee's lost wages for purposes of determining his or her compensation, is unfair to workers whose past history does not accurately reflect their future earning capacity, and is unnecessary to achieve quickness, efficiency, or predictability.

Id. at 929.

The lowest level of scrutiny was also applied in Alaska Civil Liberties Union v. State, where the Alaska Supreme Court concluded that limiting benefits to spouses and excluding same-sex domestic partners was not substantially related to the governmental interests of cost control, administrative efficiency, and promotion of marriage. 122 P.3d at 793-94. As to cost control, the court described the interest as "an interest in controlling costs by limiting benefits to those people in 'truly close

Exhibit    8
page  17  of  21  pages

relationship[s]' with or 'closely connected' to the employee." Id. at 790. The appellate court held that excluding same-sex domestic partners does not "advance the expressed governmental goal of limiting benefits to those in 'truly close relationships' with and 'closely connected' to the employee." Id. at 791.

Reid provides a helpful contrast. 964 P.2d 453 (Alaska 1998). There, the legislature's goal was to lower medical malpractice premiums. The means adopted was a statute that reduced awards for past medical expenses by the amount paid by a plaintiff's insurer, abrogating the collateral source rule. The court concluded that the substantial relationship test was met and there was no violation of the equal protection clause of the Alaska Constitution. 964 P.2d at 459-60. The court stated:

> Reducing medical malpractice damage awards by the amount received by a malpractice victim's insurer lessens the liability of health care providers. This in turn reduces the cost of insuring the health care providers. We therefore conclude that AS 09.55.548(b) bears a fair and substantial relation to the goal of alleviating the medical malpractice insurance crisis.

Id. at 459.

The governmental interests behind AS 09.17.010 are to "encourage the efficiency of the civil justice system by discouraging frivolous litigation and by decreasing the amount, cost, and complexity of litigation without diminishing the protection of innocent Alaskans' right to reasonable, but not excessive, compensation for tortious injuries caused by others." Ch. 26, § 1(1), SLA 1997. The legislature also sought to "encourage individual savings and economic growth by fostering an environment likely to control the increase of liability insurance rates to individuals and businesses resulting in a savings to the state, municipalities, and private businesses that are self-insured." Ch. 26, § 1(3), SLA 1997.

Exhibit 8
page 18 of 21 page

Case law does not require that a statutory scheme produce equitable results in all circumstances. As argued effectively in the amicus briefing, there are inherently unfair situations that will arise regardless of the scheme enacted by the legislature. For some claims, there will be no coverage to pay a jury award. In instances where estates have multiple beneficiaries, the total amount recovered for economic damages will necessarily be divided into smaller shares per claimant. What was disallowed by the supreme court in Gilmore was a statutory formula that, in application, burdened one class of people more than necessary in order to accomplish the legislature's goals. The legislature was free to adopt a formula for approximating past earnings but not a formula that arbitrarily required that a worker's wages be averaged over a 100 week period even when he/she may have only worked for six months. Notably, a different formula allowed the legislature to accomplish its goals without unfairly burdening the class of people who had worked less than 100 weeks prior to being injured.

Had the legislature adopted a per claimant formula for capping non-economic damages, the statutory scheme would not treat Ms. Eason's sons differently. However, unlike the situation in Gilmore, a "per claimant" cap on non-economic damages would be less effective at achieving the legislature's stated goals than a "per occurrence" cap. Per occurrence caps provide inherently more predictable assessments of risk. The question raised by Plaintiff is a close one, and the result in the subject case is harsh. But I conclude that the balance tips in favor of upholding this statute. Courts are to construe statutes to avoid a finding of

Exhibit 8
19 of 21

unconstitutionality if possible[4]. This decision is heavily influenced by my conclusions that (1) the dissimilar treatment here arises from the legislature's policy choice to impose a per occurrence cap rather than a per claimant cap, and (2) a cap, of any size, applied on a "per claimant" basis will be less effective at achieving the legislature's goals of decreasing the amount, cost and complexity of litigation and reducing the cost of insurance premiums. The legislature's policy decision to cap non-economic damages per occurrence necessarily involves a trade off that burdens multiple beneficiaries. However, I believe the nexus between the legislature's legitimate goals and the formula in AS 09.17.010 is a 'fair and substantial' one within the meaning of our case law. For these reasons, Plaintiff's facial and "as applied" equal protection challenges to the constitutionality of AS 09.17.010 are denied.[5]

### Conclusion

Plaintiff's Motion to Strike Amicus Brief is denied. Plaintiff's motion for entry of judgment is granted.

Plaintiff has not met his burden of demonstrating that the cap set forth in AS 09.17.010(b) violates the right to a jury trial or equal protection clause. A final judgment is entered today.

DATED  7/25/06                          _Morgan Christen_
                                        Morgan Christen
                                        Superior Court Judge

---

[4] State, Dep't of Revenue v. Andrade, 23 P.3d 58, 71 (Alaska 2001).

[5] The federal equal protection clause is less protective of individual rights than the state equal protection clause. Therefore, the above analysis necessarily results in the conclusion that the federal equal protection clause is not violated by AS 09.17.010.

EXHIBIT  8
Page  20  of  21  Pages

I certify that on this __25__ day of
_____, 2006 a true and correct
copy of the foregoing was served by
(✓) mail ( ) fax ( ) hand upon:
Hedland; Robinson; Botstein; Holmes;
Wilhelm

_Hilary Williams_
Hilary Williams
Administrative Assistant

Exhibit __8__
page __21__ of __21__ pages